878 F.Supp. 1286 (1995)
KOCH ENGINEERING COMPANY, INC. Plaintiff,
v.
GIBRALTAR CASUALTY COMPANY, INC. and International Insurance Company, Defendants.
No. 89-0624 C 5.
United States District Court, E.D. Missouri, Eastern Division.
March 10, 1995.
Rex G. Beasley, William E. Shull, N. Sue Allen, Thomas J. Meek, Benjamin L. Burgess, James M. Armstrong, Foulston & Siefkin, Wichita, KS, Thomas H. Lake, St. Louis, MO, for plaintiff.
Thomas R. Jayne, Partner, Thompson and Mitchell, St. Louis, MO, Peter M. Sfikas, Clay H. Phillips, Peterson and Ross, Chicago, IL, for Gibraltar Cas. Co., Inc.
Donald L. James, President, William Rutherford, Partner, Brown and James, St. Louis, MO, for Intern. Ins. Co.
John G. Doyen, Brinker and Doyen, St. Louis, MO, for Aetna Cas. and Sur. Co.

*1287 MEMORANDUM OPINION AND ORDER

LIMBAUGH, District Judge.
This case was brought to determine insurance coverage for a chemical plant failure in Texas. The underlying incident has already been adjudicated against the Plaintiff. In the earlier case arising out of this incident, the Plaintiff in this case was found liable to Monsanto Corporation on a theory of breach of contract. After that verdict was rendered, the Plaintiff filed this suit against his insurance carriers to enforce coverage and allege vexatious refusal to pay. The Plaintiff would have the Court believe that his policy operated as a performance bond that covered breach of contract; however, the Court finds that the policy carried by Koch does not provide for payment of this claim.

Findings of Fact
The Monsanto Chemical Company has a large petroleum distillation tower at its petroleum refinery in Texas City, Texas. The tower was used to separate styrene from ethyl benzene in order to produce marketable styrene. In order to make the tower more efficient, the Monsanto Company wanted to install a new filtration system. Monsanto officials traveled to Zurich, Switzerland where Sulzer Brothers Ltd., presented new technology. The technology involved a packing material called mellpack which is trademarked flexipac in the United States. The design of this packing material allows liquid and gas streams inside of the tower to be radially distributed. The packing provides a system of small holes on a solid surface which allows the liquid to flow over a maximum contact area. The Koch engineers chose to design the system to run as a "clean service" which touted greater efficiency but required the absence of contaminants in the solution.
Koch Engineering has the exclusive right to sell the Swiss packing material in the United States. Monsanto was aware that competitors were using similar systems in other parts of the world. Although Sulzer could not release the names and actual outputs of particular competitors, it did release data from plants in operation. The Monsanto officials were interested in the project and speculated about the identity of the competitors who were already employing the technology.
Monsanto officials were aware of the fact that this was a new technique. With that in mind, they sought and received guarantees about performance and output. They went to visit the Sulzer plant and examined theoretical models operate in the laboratory.
None of the existing, operating plants were the tremendous size of the plant in Texas; none of the plants were successfully running the clean system with holes as small as the proposed design for Texas; and finally, none of the plants that had started as clean systems were still running that way.
Koch made assurances and Monsanto signed a purchase order with Koch on June 23, 1982. The order called for packing material and the components that would be required to install it. Koch agreed to design the system of internals for the Texas City plant and Brooks Erection Company installed the system with the supervision and technical advice of Koch engineers. The installation was completed and the tower was placed in operation on August 2, 1983.
On August 7, 1983, the tower was shut down because it was not performing as expected. When the tower was dismantled, the problem was identified as mill scale, a rust like powder that formed during the manufacturing and superheating of the steel components. The mill scale had clogged the holes of the flexipac. The result was that the styrene solution was not able to penetrate the filter and the separation process became impossible. The distributors were removed, cleaned, and put back in the tower. The tower was placed back in operation but performance continued to fall short of specifications.
In November of 1983, the tower was reopened and found to be clogged with mill scale. All attempts to run the system in the manner designed by Koch were discarded. The pipe distributor system was replaced with a trough system and the tower was run as a dirty service.
*1288 Monsanto Company sued Koch Engineering for damages that resulted from the improper working of the tower and the associated cleanup costs. At trial, Monsanto claimed damages of $14,306,083.65. The jury assessed damages at $7,059,457.60 and the court entered judgment against Koch for that amount. Koch settled all of Monsanto's claims by paying the sum of $7,382,549.19, which represented the amount of the judgment as well as the interest through December 31, 1988.
The Aetna Insurance Company carried the base policy which provided coverage up to one million dollars. International Insurance Company and Gibraltar Casualty Company, Inc. provided surplus coverage of twenty million dollars to be shared by the two companies.
Aetna is not involved in this suit because Aetna met its full contracted coverage when it paid a claim in another case that had been filed against Koch.
Gibraltar and International refuse to pay the judgment on the grounds that it was not covered by the insurance contract or alternatively, if it was covered, payment is barred by an exclusion in the policy.
Koch argues that the policy which was in effect should provide coverage and that the Defendant's refusal to pay constitutes vexatious refusal.

Conclusions of Law
The Court finds that Koch's policy does not cover this situation. The mill scale clogged the holes and fouled the system so much so that after the second attempt to clean it, the system was discarded and replaced with a different type of system. It was a failure from the very beginning because it was an improperly designed, untested process on this scale that Koch wanted to sell so it made unrealistic contractual promises.
The Court finds that the claim is one for breach of contract. Having made that decision, the question is whether the policy covers the insured if they breach a contract.
As a preface to the discussion, the Court finds that the doctrine of contra proferentem, which construes the policy against the insurance company as the drafter of the contract, does not apply. In addition to the lack of ambiguity in the policy which would preclude the application of the doctrine, it does not apply to sophisticated contractors. In analyzing a dispute involving Missouri law, Judge Wisdom warned against the automatic adoption of the contra proferentem doctrine:
We do not feel compelled to apply, or, indeed, justified in applying the general rule ... in the commercial insurance field when the insured is not an innocent but a corporation of immense size, carrying insurance with annual premiums in six figures, managed by sophisticated business men and represented by counsel on the same professional level as the counsel for insurers.
Eagle Leasing Corp. v. Hartford Fire Ins. Co., 540 F.2d 1257, 1261 (5th Cir.1976).
That analysis applies to the situation in this case. Koch negotiated a complex, twenty million dollar policy with the Defendants. In fact, in this case, the parties negotiated what they called a manuscript policy, the mere title of which indicates that it was not an adhesion, preprinted contract but a policy negotiated by two equal parties on a level playing field; therefore, Koch is not entitled to any special protection.
With that framework established, the first issue to be discussed is whether the problem in Texas City was an "occurrence". Missouri law rules that a breach of contract is not an occurrence. West v. Jacobs, 790 S.W.2d 475 (Mo.App.1990). The Jacobs case involved an insurance contract about rent abatement. Koch's brief attempts to distinguish the case, but it relies heavily on Missouri Terrazzo v. Iowa National Mutual Insurance, 566 F.Supp. 546 (E.D.Mo.1983) which defines accident, a main element of occurrence, as "that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual or unforeseen". The facts show that Koch cannot fit this situation into that definition. The reckless nature with which Koch made guarantees *1289 to satisfy Monsanto's demand for zero risk, despite the fact that Koch knew this tremendous scale had never been attempted and despite the fact that they ignored the warnings of their own manuals from Sulzer which discussed the nature of fouling small holes in large columns and even listed Mellpack with the disclaimer to its contractors "product tends to fouling" (Deft. Ex. GGG, 2.12 and HHH, 1.5.1) and the previous failures world wide, all serve to preclude Koch from establishing the position that this was a covered occurrence. Instead, they serve to bring them under the Truck Ins. Exchange v. Pickering, 642 S.W.2d 113 (Mo.App.1982) analysis because the facts are so extreme that we can infer intent.
The Plaintiff encourages the Court to totally ignore the argument that this was not an occurrence because the defense was not mentioned in the early discussions about the payment of this claim and should therefore be barred by estoppel. The Court finds that the Plaintiff's theory of estoppel does not apply to this situation. As a general rule, waiver and estoppel are unavailable to expand coverage that is excluded by a specific policy provision and the Court finds nothing to warrant departure from that rule. State Farm Mutual Automobile Insurance Company v. Hartford Accident & Indemnity Co., 646 S.W.2d 379, 381 (Mo.App.1983).
Even if the Court were to rule that this was an occurrence under the policy, that would not end the analysis in favor of coverage. Coverage would still be denied because the damages fall under the "insured's work" and "insured's product" exceptions. The burden to prove the application of the exceptions lies with the insurer. Truck Insurance Exchange v. Heman, 800 S.W.2d 2, 4 (Mo. App.1990). The Court finds that Koch designed the tower and its internals and that Koch's engineers were on site to direct the work of the crews who assembled it. The Court also finds that the internals and the filtration system of the tower were the products of Koch Engineering. Despite the Plaintiff's argument to the contrary, the Court finds that the Excess Carriers have met the burden and placed the claim under the insured's work and product exceptions. See, Luyties Pharmacal Co. v. Frederic Co. Inc., 716 S.W.2d 831, 835 (Mo.App.1986).
As an alternate position, the Plaintiff argues that even if coverage is denied under the Excess Carrier's policies, it must be extended based on the underlying Aetna policy.
The underlying Aetna policy cannot be said to expand the coverage of the surplus carriers. Even though the excess policies have language that calls for coverage to be "no less broad" than the original policy, the Aetna policy also has an insured's work and an insured's product clause. Although the clauses are not identical, their effect is the same. The insured is not covered because the exception applies.
Koch also seeks recovery on the grounds of loss of the use of the tower; they are not entitled to it. Exclusion VI, B, 4 of the excess policy clearly prohibits recovery from "loss of use of tangible property which has not been physically injured or destroyed resulting from: the failure of the Named Insured's Product or work performed to meet the level of performance ... warranted or represented by the Named Insured." The wording is clear. Despite Plaintiff's assertion that this defense is an example of vexatious conduct, the Court finds that it has merit.
Koch's claims of vexatious refusal fail. Since the defenses of the Excess Carriers are meritorious, no duty is imposed. Laster v. State Farm Fire & Casualty, 693 S.W.2d 195, 197 (Mo.App.1985).
Accordingly, since the failure of the Texas City tower was not an occurrence as defined by the policy, and since the exceptions apply to this instance, and since this policy was a general liability policy and not a performance bond, the Court finds in favor of the DEFENDANTS.