AMERICAN STATES INSURANCE
COMPANY, Plaintiff/Respondent,

v.

W. Jon MATHIS, Emco Contracting Company, Inc., and Guarantee Electrical Company, Defendants/Appellants.

Nos. 73560, 73561.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 18, 1998.

David R. Bohm, Richard A. Stockenberg, Danna McNary, Stockenberg & Soraghan, P.C., St. Louis, for appellant Guarantee Electrical Company.

Charles R. Abele, St. Louis, for defendant W. Jon Mathis & EMCO Contracting Co.

Mark G. Burns, Burns & Marshall, LLP, Clayton, for respondent.

CRANE, Presiding Judge.

Insurer sought a declaratory judgment against subcontractor, sub-subcontractor, and sub-subcontractor's owner that it had no duty to defend and indemnify sub-subcontractor or owner under a commercial general liability policy in a negligence, negligent misrepresentation, and breach of contract action brought by subcontractor to recover damages it incurred when it had to remove and replace sub-subcontractor's improperly trenched and constructed duct banks and repair and replace electrical conduit, cable, and wire installed in the ducts by others. The trial court entered summary judgment in favor of insurer on the grounds that the conduct which caused the damage was not an "occurrence" as defined in the policy. Subcontractor, sub-subcontractor, and sub-subcontractor's owner appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, American States Insurance Company (American States), issued a commercial general liability policy to EMCO Contracting Co., Inc. (EMCO)[1] which was in effect at the time of the underlying incident. The policy covers property damage caused by an "occurrence" that takes place in the coverage territory and occurs during the policy period.

The policy defines the term "occurrence" as:

an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Defendant Guarantee Electrical Company (Guarantee) was the electrical subcontractor for the construction of a federal penitentiary in Pekin, Illinois. Its responsibility was to install an integrated electrical, security, and communications system. It sub-subcontracted a portion of its work to EMCO to trench, excavate, and install duct banks in the trenches which would carry conduit for the integrated electrical system. EMCO began work in August, 1992.

Approximately one year later, while EMCO was still working on the project, Guarantee discovered that EMCO had constructed the trenches and duct banks at the wrong grade and slope and failed to install rebar. After notice, Guarantee terminated the contract and retained other contractors to tear out the improperly constructed duct banks, to remove the electrical conduit, cable, and wire therein, to retrench those areas according to plans and specifications, to reinstall the duct banks, conduit, cable, and wire, and install rebar that EMCO failed to install.

Thereafter, Guarantee filed an action against EMCO and its owner, W. Jon Mathis (Mathis). In Counts I, III, and V of its Third Amended Petition, the relevant counts on this appeal, Guarantee sought damages against EMCO and Mathis for negligence and negligent misrepresentation and against EMCO for breach of contract. Guarantee alleged that EMCO had dug the trenches at the wrong grade in violation of contract documents and failed to reinforce the ducts with rebar as required by the contract. The negligence and negligent misrepresentation counts were based on the same acts. Guarantee alleged that, as a result of EMCO and Mathis's faulty work, it had to spend additional project management time correcting the work and it had to expend money to retain other contractors to remove the improperly installed duct banks, retrench those areas in accordance with the plans and specifications, and reinstall the duct banks.

EMCO and Mathis requested American States to defend them under their commercial general liability policy. American States undertook their defense, pursuant to a non-waiver agreement and a reservation of rights. It filed this declaratory judgment action to resolve its duty to defend and indemnify.

In April, 1997 the trial court in the Guarantee/EMCO/Mathis action approved a settlement agreement and entered a consent judgment in favor of Guarantee. The con-

---

1. EMCO, a Missouri corporation, was administratively dissolved in January, 1988, reinstated in February, 1994, and again dissolved in May, 1996. Defendant W. Jon Mathis is owner and officer of EMCO.

sent judgment held EMCO and Mathis jointly and severally liable for $418,543.64 in damages, plus $126,191.43 in interest, for a total of $544,735.07. Further, in settlement of EMCO and Mathis's counterclaim, Guarantee agreed to pay them a portion of amounts collected from American States.

On October 22, 1997 the trial court in this action entered summary judgment in favor of American States on the ground that Guarantee's damages were not caused by an "occurrence" because the improper construction of the duct banks was within EMCO and Mathis's control and was not an accident.

### DISCUSSION

In its sole point relied on, Guarantee asserts that the trial court erred in ruling that its damages were not caused by an "occurrence" as defined and used in the policy. It claims that the damages it sustained from EMCO and Mathis's failure to trench at the proper slope and grade[2] were the result of an "accident" in that EMCO and Mathis neither intended nor expected these damages to result from their work. American States responds that there was no "occurrence" because the construction of the duct banks was within EMCO and Mathis's control and not an accident.

■ An insurer's duty to defend a suit against its insured is determined by the language of the policy and the allegations asserted in the plaintiff's petition. *Scottsdale Ins. Co. v. Ratliff*, 927 S.W.2d 531, 532 (Mo. App.1996). Under Missouri law[3] the plaintiff has the burden of showing that the loss and damages are covered by the policy; the defendant insurer has the burden of demonstrating the applicability of any exclusions on which it relies. *Taylor–Morley–Simon, Inc. v. Michigan Mut. Ins. Co.*, 645 F.Supp. 596, 599 (E.D.Mo.1986).

■ Unless an ambiguity exists, we must enforce the policy as written, giving the language of the policy its ordinary meaning. *Krombach v. Mayflower Ins. Co., Ltd.*, 827

S.W.2d 208, 210 (Mo. banc 1992). An ambiguity exists where the language in a policy is reasonably and fairly open to different constructions. *Id.* We read the provisions of the insurance policy in the context of the policy as a whole and give the language used its ordinary meaning unless another meaning is plainly intended. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 78 (Mo. banc 1998).

■ The American States policy is a standard form commercial general liability policy which insures certain property damage caused by accident to the property of others. The intent of such policies is to protect against the unpredictable and potentially unlimited liability that can result from accidentally causing injury to other persons or their property. *Schauf*, 967 S.W.2d at 78. A commercial general liability policy is not intended to protect business owners against every risk of operating a business. *Id.* "Business risks are those risks that are the 'normal, frequent, or predictable consequences of doing business, and which business management can and should control and manage.'" *Id.* (quoting James T. Hendrick & James P. Wiezel, *The New Commercial General Liability Forms—An Introduction and Critique*, 36 Fed'n Ins. & Corp. Couns. Q. 319, 322 (Summer 1986)).

> It is not the function of the CGL policy to guarantee the technical competence and integrity of business management. The CGL policy does not serve as a performance bond, nor does it serve as a warranty of goods or services. It does not ordinarily contemplate coverage for losses which are a normal, frequent or predictable consequence of the business operations. Nor does it contemplate ordinary business expense, or injury and damage to others which results by intent or indifference.

Hendrick & Wiezel, *supra*, at 322 n. 6 (quoting George H. Tinker, *Comprehensive General Liability Insurance—Perspective and Overview*, 25 Fed. Ins. Couns. Q. 217, 224 (Spring 1975)).

---

**2.** Guarantee has stated that it is not claiming that the policy provides coverage for EMCO's failure to install rebar.

**3.** Both parties agree that Missouri law applies under the principles set out in *Becker Metals Corp. v. Transp. Ins. Co.*, 802 F.Supp. 235 (E.D.Mo.1992).

■ As used in this policy, the term "accident" is defined by its common meaning, which is:

An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by an accident.

*West v. Jacobs*, 790 S.W.2d 475, 477 (Mo.App.1990)(quoting *Murphy v. Western and Southern Life Ins. Co.*, 262 S.W.2d 340, 342 (Mo.App.1953)); *Lindemann v. Gen. Am. Life Ins. Co.*, 485 S.W.2d 477, 479 (Mo.App. 1972).

■ Under this definition breaches of contract are not "accidents" or "occurrences." *West v. Jacobs*, 790 S.W.2d at 478 (breach of lease); *Maryland Cas. Co. v. Mike Miller Companies, Inc.*, 715 F.Supp. 321, 323 (D.Kan.1989)(breach of construction contract); *Koch Engineering Co. v. Gibraltar Cas. Co.*, 878 F.Supp. 1286, 1288–89 (E.D.Mo. 1995) (applying Missouri law) (breach of contract to design and provide filtration system).

■ The cause of Guarantee's loss was EMCO and Mathis's failure to construct the ducts according to contract specifications. Such a breach of a defined contractual duty cannot fall within the term "accident." Performance of its contract according to the terms specified therein was within EMCO's control and management and its failure to perform cannot be described as an undesigned or unexpected event.

Further, this breach did not cause an unintended accident to other property. The underlying petition alleges that EMCO and Mathis's faulty work also damaged the conduit, wire, and cables contained within the improperly installed trenches and duct banks, because they were "rendered useless" as a consequence of being contained within the improperly constructed work. The petition alleged that the breach of contract was discovered while EMCO was still on the job and thus, before construction of the prison was complete. The trenches and duct banks were constructed to hold electrical conduit and cables. That the electrical conduit and cables had to be torn out and replaced when the duct banks were torn out and replaced was a normal, expected consequence of EMCO's breach of contract and not an occurrence.

The judgment is affirmed. American States's motion to strike Point I of Guarantee's Reply Brief is denied.

CRAHAN, C.J. and RHODES RUSSELL, J., concur.