# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 10, 2009

Charles R. Fulbruge III
Clerk

No. 09-20071

WESTCHESTER SURPLUS LINES INSURANCE COMPANY

Plaintiff - Appellee

v.

MAVERICK TUBE CORPORATION

Defendant - Appellant

--------------------------------------------------------------------------------------

MAVERICK TUBE LP, a Delaware limited partnership; TUBOS DEL CARIBE, LTDA, a Colombian sociedade por quotas de responsabiliadade limitada

Plaintiffs - Appellants

v.

WESTCHESTER SURPLUS LINES INSURANCE COMPANY, a Georgia Corporation

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas, Houston

Before KING, DAVIS, AND BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellants Maverick Tube Corporation, Tubos del Caribe, Ltda, and Maverick Tube LP (collectively "Maverick") appeal the declaratory judgment ruling that Appellee Westchester Surplus Lines Insurance Company ("Westchester") had no duty to indemnify Maverick in an accident resulting from defective piping. This dispute involves the application of Missouri state law in determining if an insurance "occurrence" and the duty to indemnify exists. For the reasons set forth below, we reverse the district court's grant of summary judgment and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Tubos manufactures drilling casing sold by Maverick to both distributors and end users. Maverick purchased a commercial general liability insurance policy ("CGL Policy") and an umbrella insurance policy ("Umbrella Policy") from Westchester. The CGL Policy provides indemnification for "property damage" resulting from an "occurrence."[1] An "occurrence" is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[2]

In 2006, Maverick sold a specific casing, P-110, to Dominion Exploration and Production Company ("Dominion") for use and operation in its gas wells. In September 2006, Dominion experienced catastrophic failure in four gas wells that were using the P-110 casing. Maverick opened an investigation on this matter, quarantined all P-110 casing, and notified other customers of the

---

[1] Subsection a. "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." Subsection b. "Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

[2] The Umbrella Policy provides almost identical coverage and language.

potential problems. Maverick informed Dominion that its warranty covered the cost of the casing, and it sent Westchester notice of this incident and requested indemnification.

On November 29, 2006, Dominion sent a written demand letter advising Maverick that Dominion considered the failed casing to be, among other things, a breach of warranty and sought $9,802,506 in damages for i) completion costs, ii) lost production, iii) plugging costs, and iv) re-drilling costs for new wells in exchange for releasing all claims against Maverick. Investigations by Maverick, Tubos, and the independent party hired by Maverick determined that Tubos' production process had a flaw in the heat treatment process and chain conveyance system, in which the casing would cool off outside the furnace and, upon re-entering the furnace, the conveyance chain would touch the casing causing it to cool more quickly than the rest of the surface. This defect resulted in brittle points on the pipe. These investigations and reports showed that Maverick and Tubos were responsible for Dominion's damages. Maverick forwarded these reports and documents to Westchester, who relied on the investigations performed by Maverick and Tubos without independent investigation or study per the CGL Policy terms.[3]

Maverick settled with Dominion in March 2007 for $6,601,035.39. The settlement was several million less than the amount originally sought by Dominion because the breach of warranty limit for replacing the casing ($808,390.61) and loss of production revenues were both excluded from the settlement total.

Westchester denied Maverick's claim on January 25, 2007. Westchester then filed this declaratory judgment action in February 2007 on the same day as Maverick's response to Westchester's denial of coverage. Maverick filed its

---

[3] The primary policy required Maverick to investigate any claim until the $350,000 self-insured retention per occurrence amount was exhausted.

lawsuit in the Eastern District of Missouri, which was consolidated in December 2007 with Westchester's action filed in the Southern District of Texas. Both parties agree that Missouri law controls this case.

Maverick's claim against Westchester excluded the $350,000 self-insured retention limit and the cost of the casing sold, $808,390.61, as Maverick's warranty covered the replacement product cost and the CGL Policy excluded the cost to replace a defective product. Westchester moved for summary judgment and argued that Maverick's entire claim was a breach of warranty claim, which does not constitute an "occurrence" under Missouri law, based on Dominion's November 29 letter sent to Maverick. Maverick filed a cross motion for summary judgment and argued that Dominion's letter was not dispositive of the coverage issue and that Westchester was vexatious in its refusal to pay Maverick's claim.

The district court granted Westchester's request for summary judgment, holding that Dominion advanced only a breach of warranty claim against Maverick and that a warranty claim is not within the meaning of the word "occurrence" in a CGL Policy or Umbrella Policy under Missouri law.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *E.g., Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996). Summary judgment is proper if the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## DISCUSSION

The insured bears the burden of showing that the damages alleged are covered by the insurance policy. *Am. States Ins. Co v. Mathis*, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998). But an insurer may not merely rest upon the

allegations found in the petition; instead, the insurer must consider the facts it knew or could have reasonably ascertained and show there is no possibility of coverage. *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 392 (Mo. Ct. App. 2007) (quoting *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 83 (Mo. Ct. App. 2005)). The unsettled state of Missouri breach of warranty law stems from cases that fail to specify whether the underlying facts or the cause brought by the disputing party has been the basis for determining whether an occurrence exists that triggers the duty to indemnify under insurance policies.

The Letter, Settlement, and Cause of Action

Maverick contends that the district court erred in finding that Westchester did not need to provide coverage for the settlement with Dominion. Maverick argues that the text and context of the November 29 letter refers not only to Maverick's published warranty but also discusses the release of "all claims." Further, Maverick argues that because the letter identified the four components of recovery and because investigations were still ongoing when the letter was written, the claim was not limited solely to the breach of warranty claim. Maverick stresses that had Dominion wanted to recover on the sole ground of Maverick's warranty, the letter would have only had one component of recovery—the cost of the casing—because the warranty only covered the purchase price of a product and not additional damages. Moreover, no formal list of causes of actions by Dominion in the form of a complaint or petition was advanced. Westchester asserts that the letter only discusses recovery under a breach of warranty theory and that because Dominion never asserted a claim for negligence or another tort, Westchester correctly denied coverage. In essence, Westchester argues that Maverick's only evidence of a claim is Dominion's letter, and the letter's only mention of legal recovery theories used the word "warranty"; however, Westchester cites to no authority suggesting that a

demand letter can or should be used as the sole indicator of whether a claim is covered.

Concerning the settlement, Maverick argues that the settlement agreement's language is the evidence that provides additional facts that initiates Westchester's duty to indemnify. The agreement itself excludes the purchase price of the P-110 casing and mentions that "all matters relating to the Incident" are resolved.[4] The settlement language mirrors the warranty agreement language that "strictly limit[s the damages] to the purchase price of the [g]oods paid." Westchester disagrees that the settlement agreement should be considered.

Westchester's reasoning suggests that had Dominion filed a lawsuit that used the word "negligence" or "products liability" it would pay for the damages because the facts support this claim. But one important difference should be noted—no formal complaint by Dominion was ever filed. Thus, the resolution by the Eighth Circuit in *Spirco Environmental, Inc. v. American International Specialty Lines Insurance Co.*, 535 F.3d 637 (8th Cir. 2009) is helpful in interpreting the facts of the instant case.

In *Spirco*, American refused to reimburse the arbitration fee paid by Spirco because the recovering party had characterized the settlement as a breach of contract claim. *Id.* at 639. But Spirco's attorney advanced the property-damage nature of the claim from the beginning of the arbitration due to the findings made by the arbitrator and the positions of the parties. *Id.* at 640. Because the damage occurred after Spirco had finished its contract, the claim was not limited to the completion of the contract; instead, the claim

---

[4] Relevant language includes the following: "WHEREAS, Dominion alleges that it has suffered certain damages to its real and personal property interests in the Wells, beyond the damage to the Casing itself. . ." Further in the agreement, "WHEREAS, the Parties agree that Dominion's cost of the Casing alleged to have failed is not part of this Agreement, and, that Dominion has already been compensated for that portion of its damages. . ."

focused on the property damages that occurred later. *Id.* The court determined that a property damage claim existed based on the factual assertions, substance of the claims, and arbitrator's findings, and not on the label chosen by the property owner. *Id.*

Likewise, in *Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co.*, 740 F.2d 647 (8th Cir. 1984), the Eighth Circuit decided that the facts behind a property damage claim and not the label as a diminution in value cause of action was dispositive in applying Missouri insurance law. *Id.* at 650. In *Missouri Terrazzo*, the sub-contractor improperly installed flooring that cracked and discolored in a short amount of time. *Id.* at 649. The sub-contractor settled with the party and then sought coverage from its insurer. *Id.* The court noted that the flooring suffered physical damage to tangible property, which met the definition of property damage under the insurance policy; thus, the insurer had a duty to indemnify the insured for the settlement amount. *Id.* at 650, 653.

These two Eighth Circuit cases are instructive to this Court's consideration because they dealt with an arbitration award and settlement award, instead of a lawsuit, and examined the underlying facts of the claim to characterize the cause(s) of action at issue. *See Spirco*, 535 F.3d at 640-41 (examining the factual assertions, substance of claims, and findings rather than the label the injured party decides to attach to its claim); *Missouri Terrazzo*, 740 F.2d at 650 (imposing a duty to indemnify for the settlement amount because of the physical damage to tangible property alleged by the insured).

Missouri insurance law focuses on the relevant facts and their relation to possible causes of action. The letter by the property owner in *Spirco* only characterized its arbitration counterclaim as a breach of contract claim, but the court focused on the substance of the property owner's claim to find a property damage claim. Similarly, the Missouri Court of Appeals in *Columbia Mutual Insurance Co. v. Epstein*, 239 S.W.3d 667, 671 (Mo. Ct. App. 2007) noted that the

underlying facts of any one event could belong to more than one cause of action and stated that the facts alleged expound not only on the breach of contract claim, but also on a products liability claim.[5] Thus, this Court may examine the underlying facts of the event, the causes of action alleged, the supporting facts, and the ultimate settlement of the case to decide these legal issues.

In examining the facts, Appellants' petition successfully supports a products liability cause of action. To prove products liability, a plaintiff must show four elements: 1) the product was sold in the course of business, 2) the product was in a defective condition and unreasonably dangerous at the time it was put to a reasonably anticipated use, 3) the product was used as reasonably anticipated, and 4) damage occurred as a direct result of the defective condition that existed at the time of sale. *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362, 364 (Mo. 1969) (citing Restatement (Second) of Torts, Section 402A); *see also Fahy v. Dresser Indus.*, 740 S.W.2d 635, 637 (Mo. 1987) (en banc). Section 2 of the Restatement (Third) of Torts notes that a product is defective when, at time of sale or distribution, it contains a manufacturing defect and when it departs from its intended design even though all possible care was exercised. Restatement (Third) of Torts, § 2 (1998). Here, Dominion entered into a contract with Maverick for the purchase of P-110 casing. Maverick purchased the casing for Dominion's gas wells from Tubos. The P-110 casing was defective at the time of sale due to the defect in Tubos' chain-link conveyer system, and Maverick did not intend for the casing to be defective. Dominion reasonably used the casing for its intended use in its gas wells. The P-110 casing was defective as to the design which caused the casing to be in a dangerous and defective condition which was unsafe for its intended use. As a

---

[5] The warranty claims in *Epstein* had been dismissed by the district court and only the products liability claim remained on appeal.

direct cause of the defective casing, Dominion suffered a total loss of four gas wells and had to start drilling in new locations.

Was There An Occurrence Under the Contract?

A CGL Policy which insures against property damage resulting from an accident does not cover normal, frequent, or predictable losses. *Mathis*, 974 S.W.2d at 649. Rather, an event must be unexpected to be an accident or occurrence. *Id*. at 650. While the duty to defend doctrine applies only when an insured has been sued, the insurer is required to take into consideration all known facts or facts discoverable upon investigation. *Zipkin v. Freeman*, 436 S.W.2d 753, 754 (Mo. 1968). An insurer's duty to defend a suit against its insured is determined by the policy's language and allegations asserted. *Scottsdale Ins. Co. v. Ratliff*, 927 S.W.2d 531, 532 (Mo. Ct. App. 1996). A duty to defend arises if the complaint merely alleges facts that give rise to a claim that could potentially be within the policy's coverage. *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 392 (Mo. Ct. App. 2007) (citing *McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liabl. Ins. Co.*, 989 S.W.2d 168, 170-71 (Mo. 1999)); *see also Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005) (stating that the duty to defend arises only upon comparing the policy language with the "allegations in the pleadings"). Because the duty to defend is broader than an insurance's company duty to indemnify, if the insurance company does not have a duty to defend, it does not have a duty to indemnify either. *See Millers Mut. Ins. Assoc. of Ill. v. Shell Oil Co.*, 959 S.W.2d 864, 869 (Mo. App. 1998); *see, e.g.*, Willy E. Rice, *The Court of Appeals for the Fifth Circuit: A Legal Analysis and Statistical Review of 2005-2006 Insurance Decisions*, 39 TEX. TECH L. REV. 843, 950-51 (2007) (noting that under *Farmers Texas County Mutual Insurance Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997), an insurer may have a duty to defend but not a duty to indemnify).

Westchester argues that Maverick is foreclosed from recovery because no Missouri state court has explicitly held that an action for a breach of warranty results in an occurrence that triggers the duty to defend. However, in the only Missouri related case in which the sole cause of action was for breach of warranty, the Eighth Circuit in *Koch Engineering Co. v. Gibralter Casualty Co.*, 78 F.3d 1291, 1294 (8th Cir. 1996) applied Missouri law and determined that a breach of warranty claim could constitute an occurrence. In *Koch*, the insured installed a distillation tower that the court decided was reckless in its design and its installation,[6] but that Koch did not intend for the equipment to be stopped up by debris. *Id.* at 1293-94. The *Koch* court did not reach its decision based on the cause of action (breach of warranty), but based on the supporting facts, intent of the insured, and the foreseeability of the event. *Id.*; *see Amerisure Mut. Ins. Co v. Paric Corp.*, No. 4:04CV430-DJS, 2005 WL 2708873, at *6 (E.D. Mo. Oct. 21, 2005) (noting that the interpretation of Missouri law on the occurrence issue requires each court to make a case specific determination of whether an unintended occurrence exists). What label is used for the cause of action seems only relevant in breach of contract claims when the party fails to perform. *See, e.g.*, *Mathis*, 974 S.W.2d at 650 (stating that breaches of contract for performance could not be accidents or occurrences). Indeed, Missouri courts have focused on a variety of factors in deciding the existence of an occurrence.

First, did the insured intend, expect or desire the results? *See Hawkeye-Security Ins. Co. v. Davis*, 6 S.W.3d 419, 427 (Mo. Ct. App. 1999) (noting an occurrence if the event was undesigned or unexpected); *see also Koch*, 78 F.3d at 1294 (finding an occurrence in the absence of intent for reckless design and installation). Second, was the event simply a business risk not covered by the

---

[6] Debris prevented the tower from producing the contracted quantities.

insurance policy? *See Mathis*, 974 S.W.2d at 649 (noting that general liability coverage by insurer does not serve as a performance bond); *see also Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. 1998). Third, would the exclusion leave the insured without coverage? *See Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co.*, 566 F.Supp. 546, 552 (E.D. Mo. 1983) (stating that policies construed to cover only accidents not involving breach of warranty or negligence would result in no protection for the insured).

Westchester summarizes several failure-to-perform cases that allege a variety of causes of action to argue that Maverick's case fails under similar reasoning. In *Mathis*, the contractor had hired a subcontractor to install the electrical system. *Mathis*, 974 S.W.2d at 648. The subcontractor improperly constructed the trenches and duct banks and failed to install rebar which later had to be removed and properly installed. *Id.* The subcontractor requested its insurance company to defend it against damages filed by the contractor for negligence, negligent misrepresentation, and breach of contract. *Id.* The *Mathis* court stated that breaches of contract for performance could not be accidents or occurrences. *See id.* at 650 (citations omitted). The court concluded that because performance of duct construction was in the control of the sub-contractor and was not undesigned or unexpected and because the breach did not cause unintended damage to other property, an accident did not occur. *Id.* at 650. Similarly, in *Hawkeye-Security*, the causes of action were for breach of contract and breach of express and implied warranties because the insured had constructed a defective home and then left before finishing. 6 S.W.3d at 421. The court determined that this failure to perform could not be unexpected and thus, not an accident. *Id.* at 426. In *Charles Hampton's A-1 Signs, Inc. v. American States Insurance Co.*, 225 S.W.3d 482, 489 (Tenn. App. 2006), the court applied Missouri law to decide that the insured's defective product used to create another structure and the insured's failure to perform according to contract

specifications was not an occurrence. In *St. Paul Fire & Marine Ins. Co. v. Building Construction Enterprises*, 484 F.Supp. 2d 1004 (W.D. Mo. 2007), the insured's failure to perform its contractual obligations could not be an occurrence. Finally, in a negligence cause of action, the court in *Cincinnati Insurance Co. v. Venetian Terrazzo, Inc.*, 198 F. Supp. 2d 1074 (E.D. Mo 2001) determined that an accident did not occur when the contractor was merely negligent in the pouring of concrete because this action was a failure to perform under the contract, not an unexpected event.

Relevant to the discussion of cases not already summarized in the previous paragraph is *Stark Liquidation Co. v. Florists' Mutual Insurance Co.*, 243 S.W.3d 385, 394 (Mo. Ct. App. 2007). In *Stark*, the causes of action alleged were for negligence, intentional misrepresentation, and breach of express and implied warranties. *Id.* at 389. The court focused on the negligence and negligent misrepresentation aspects of the facts, that Stark neither intended nor expected a crop loss, and that the resulting bacterial damage caused to the trees constituted an occurrence. *Id.* at 392-93.

Westchester relies on the Missouri courts that try to determine with a bright-line rule those causes of action that exclude the existence of an occurrence. Maverick relies on the Missouri courts which focus on the failure of these contractors to perform and the lack of foreseeability of the actions—the non-performance and breach of these parties are not unexpected nor unforeseen and are within the control of the actors (they merely need to do or not do something)—and not the label. Maverick's interpretation is preferred by Missouri state courts and the Eighth Circuit. For example, the *Mathis* court was not focused on the fact that the petition alleged negligence or negligent misrepresentation—labeled claims that other Missouri courts have found an occurrence to exist. By focusing on the breach of contract label, the *Mathis* court was simply noting that it was not an accident for someone not to properly

perform. Here, Maverick's breach to Dominion was not simply non-performance, such as failure to deliver the casing; rather, it involved an unforseen and unexpected event (the defective casing production which resulted in Dominion's gas wells failure).

The final question in determining if an occurrence exists is whether property damage has occurred. The relevant portions of the CGL and Umbrella Policies define property damage as "physical injury to tangible property, including all resulting loss of use of that property." Here, Dominion suffered property damage. The facts from the Eighth's Circuit case of *Missouri Terrazzo*, in which the flooring suffered physical damage to tangible property which met the definition of property damage under the insurance policy and triggered the insurer's duty to indemnify, 740 F.2d at 650, 653, are similar to the instant case. The pipes and casing are tangible property that were physically injured because of the brittle spots on the defective casing. The casing resulted in "catastrophic failure" for four gas wells in north Texas that caused physical damage to the drilling operations and wells. Because the wells were damaged beyond use, Dominion had to drill four new wells. Furthermore, Westchester's agent acknowledged in a deposition that Dominion had lost the use of its well, stated that it had no opinion on the property damage issue, and has offered no evidence on this issue. Under the definition of the insurance policy, this event would qualify as property damage. Therefore, Dominion's claim constitutes an occurrence.

## CONCLUSION

We see no reason to depart from the Eighth Circuit's interpretation of Missouri insurance law. Under the facts presented, the casing defect was a product defect that did not change simply because Dominion wrote a letter pursuing settlement and other options on Maverick's failure to deliver non-defective P-110 casing. Because the CGL Policy used general occurrence

13

language, the casing failure constituted an occurrence that resulted in property damage.  Accordingly, we REVERSE and REMAND to the district court for a determination of damages.