DON E. BURRELL, J.
*474 Barton Mutual Insurance Company ("Insurer") appeals the judgment that awarded Douglas Davies and Lynette Davies ("Homeowners") $255,594 plus interest after a consolidated trial of Homeowners' equitable garnishment action and Insurer's petition for declaratory judgment. See sections 379.200 and 527.010.[1] Homeowners' equitable garnishment claim was based upon a judgment they had obtained against the Estate of Keith Broege ("Builder") in a jury trial of a breach of implied warranty of habitability claim based upon defects in a new house Homeowners had purchased from Builder ("the warranty trial"). We affirmed that judgment on appeal in Davies v. Estate of Broege , 410 S.W.3d 303, 304 (Mo. App. S.D. 2013).[2]
Homeowners' equitable garnishment petition claimed that their "loss rests on an occurrence for which [Builder] was insured by [Insurer]." Conversely, Insurer sought a judgment declaring that it "owe[d] no duty to indemnify any portion of the" warranty trial judgment because there had been "no 'occurrence' " under Insurer's insurance contract with Builder ("the policy"). After "[a]ll issues and claims" had been submitted "upon the pleadings, briefings, exhibits and argument[s] of counsel[,]" the trial court found that the policy provided coverage because "[t]he failure of [Builder] to construct the house in such a manner that it did not consistently flood when it rained constitute[d] an occurrence" under the policy.
In three points, Insurer claims the judgment was erroneous as a matter of law because: (1) Builder's breach of the implied warranty of habitability "was not an 'occurrence' "; (2) "there was no 'property damage' "; and (3) "coverage was excluded" under the terms of the policy. Because the warranty trial did not establish as a matter of law that what Homeowners suffered constituted an "occurrence" under the policy, we find a portion of Insurer's first point to have merit. The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.[3]
Applicable Principles of Review and Governing Law
When reviewing a court-tried case, we view all evidence and inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. Ortmann v. Dace Homes Inc. , 86 S.W.3d 86, 88 (Mo. App. E.D. 2002). However, where the facts are derived solely from written documents such as pleadings, stipulations, exhibits, and depositions, we decide only whether the trial court drew the proper legal conclusions from the facts stipulated. Glass v. Missouri Property Ins. Placement Facility , 912 S.W.2d 653, 656 (Mo. App. S.D. 1995).... Finally, even where the facts are derived from stipulated exhibits and agreements, we must accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence.
*475 Gen. Motors Acceptance Corp. v. The Windsor Grp., Inc. , 103 S.W.3d 794, 796-97 (Mo. App. E.D. 2003) (quotation omitted).[4]
The interpretation of an insurance policy is an issue of law, subject to de novo review. Mendenhall v. Property and Casualty Ins. Co. of Hartford , 375 S.W.3d 90, 92 (Mo. banc 2012). "[I]n construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance...." Ritchie v. Allied Prop. & Cas. Ins. Co. , 307 S.W.3d 132, 135 (Mo. banc 2009). The general rule in interpreting insurance contracts is to give the language of the policy its plain meaning. Gavan v. Bituminous Cas. Corp. , 242 S.W.3d 718, 720 (Mo. banc 2008). If language in an insurance policy is ambiguous, this Court resolves the ambiguity against the insurer-drafter. Mendenhall , 375 S.W.3d at 92 ; Krombach v. Mayflower Ins. Co., Ltd. , 827 S.W.2d 208, 211 (Mo. banc 1992). An ambiguity exists only when a phrase is " 'reasonably open to different constructions.' " Mendenhall , 375 S.W.3d at 92.
Allen v. Cont'l W. Ins. Co. , 436 S.W.3d 548, 553-54 (Mo. banc 2014).
"To establish an equitable garnishment claim, the plaintiff must prove that he obtained a judgment in his favor against the insurance company's insured, the policy was in effect when the incident occurred and that the injury is covered by the insurance policy." Kotini v. Century Sur. Co. , 411 S.W.3d 374, 377 (Mo. App. E.D. 2013). The plaintiff bears "the burden of showing by substantial evidence that the claim falls within the coverage provided by the insurance contract." Id. at 378.
Facts and Procedural History
Our summary of the facts is drawn from the materials submitted to the trial court on the date set for trial.[5] We therefore " 'accept the evidence and inferences favorable to' " Homeowners, Gen. Motors , 103 S.W.3d at 797, looking only to see if "the trial court drew the proper legal conclusions[.]" Id. (quotation omitted).
In late 2008 and early 2009, Homeowners purchased and moved into a new house built by Builder. "Shortly after moving in, they noticed water accumulation in the lower level. Repeated water intrusions over the following months caused a host of problems, including foul smells, soaked carpeting, wall damage, and mold and mushroom growth. [Builder] eventually sent crews to clean the house after every *476 hard rain." Davies , 410 S.W.3d at 304. During the warranty trial, Homeowners took "the position that the problem's cause remained unknown[.]" Id. The jury found that "the house was not fit for" the use for which it was purchased. "[W]ithin a reasonable time after [Homeowners] knew or should have known the [house] was not fit for such use, [Homeowners] gave [Builder] notice thereof, and ... as a direct result of the house being unfit for such use, [Homeowners] were damaged." The jury "assess[ed] the damages of [Homeowners] at $255,594 [.]"
Homeowners' action for equitable garnishment and Insurer's action for declaratory judgment followed the entry of the judgment in the warranty trial, and those separate actions were consolidated for trial. Both claims relied upon the policy, which provided "COMMERCIAL LIABILITY COVERAGE " to Builder. The following provisions of the policy are relevant to Insurer's claims on appeal:
?
....
15. Occurrence means an accident and includes repeated exposure to similar conditions.
....
?
....
COVERAGE L BODILY INJURY LIABILITY PROPERTY DAMAGE LIABILITY
We pay all sums which an insured becomes legally obligated to pay as damages due to bodily injury or property damage to which this insurance applies. The bodily injury or property damage must be caused by an occurrence which takes place in the coverage territory , and the bodily injury or property damage must occur during the policy period.
....
COVERAGE N PRODUCTS/COMPLETED WORK
We pay all sums which an insured becomes legally obligated to pay as damages due to bodily injury or property damage arising out of the products/ completed work hazard to which this insurance applies. The bodily injury or property damage must be caused by an occurrence which takes place in the coverage territory , and the bodily injury or property damage must occur during the policy period.
Insurer sought summary judgment in its favor, maintaining that "there was no duty to indemnify any portion of the actual judgment" from the warranty trial as the damage to the house was not covered by the policy. The trial court denied Insurer's summary judgment motion and instead awarded Homeowners a "JUDGMENT " in the amount of $255,594, plus interest. Insurer's subsequent appeal of this "judgment" was "dismissed for lack of a final judgment."[6] The trial court then set aside its ruling on Insurer's summary judgment motion and took "[a]ll issues and claims" under advisement after the hearing that took place on the date the case had been set for trial. The resulting judgment now challenged in this appeal ("the judgment") was entered in December 2016.[7]
*477 The judgment quoted portions of the policy, and it included the following findings:
[Homeowners] obtained a judgment against [Builder] in the sum of $255,594.00 which continues to carry interest at 9% per annum from June 29, 2012. [Insurer], in [its] answer to the equitable garnishment case, as well as [its] declaratory judgment [sic], assert[s] that there is no coverage.
The Court finds that the [policy] ... does in fact provide coverage. ...
To construe this policy as [Insurer] would suggest, which would exclude any breach of warranty due to negligence, [sic] would in fact provide no coverage to the insured. The failure of [Builder] to construct the house in such a manner that it did not consistently flood when it rained constitutes an occurrence coupled with the fact that the basement was constructed by a subcontractor makes [Insurer] liable for the judgment entered against [its] insured.
Insurer's appeal timely followed the entry of the judgment.
Analysis
Point 1-Breach of Implied Warranty of Habitability Not an "Occurrence"
Insurer contends that Homeowners' equitable garnishment claim "fails as a matter of law because [Homeowners] cannot establish an 'occurrence' under the [policy] issued to [Builder,]" citing Hawkeye-Sec. Ins. Co. v. Davis , 6 S.W.3d 419 (Mo. App. S.D. 1999), and Am. States Ins. Co. v. Mathis , 974 S.W.2d 647 (Mo. App. E.D. 1998). Homeowners respond that the cited cases are distinguishable, and they quote D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co. , 316 S.W.3d 899, 905 (Mo. banc 2010), as recognizing that "[t]he determinative inquiry into whether there was an 'occurrence' or 'accident' is whether the insured foresaw or expected the injury or damages."[8] The D.R. Sherry court reasoned that "an 'accident' does not include expected or foreseeable damage," id. , and, in that case, the contractor testified as a part of his claim against the insurance company that he did not foresee the home damage that resulted from soil settlement. Id.
The conclusion in D.R. Sherry as to the meaning of an occurrence or accident is similar to the language in Hawkeye-Security and Mathis that defined "accident" as
"[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as to die by an accident."
Hawkeye -Security , 6 S.W.3d at 425 (quoting Mathis , 974 S.W.2d at 650 ).[9]
But Mathis and Hawkeye -Security differ from D.R. Sherry in that they also "stand for the proposition that failure to perform work according to defined contractual *478 specifications and duties-a breach of contract-does not fall within the meaning of accident or occurrence." Assurance Co. of Am. v. Secura Ins. Co. , 384 S.W.3d 224, 234 (Mo. App. E.D. 2012) ; see also Mathis , 974 S.W.2d at 650, and Hawkeye -Security , 6 S.W.3d at 426. The reasoning in Mathis and Hawkeye -Security rested on the premise that the "performance of a contract according to the terms specified therein was within the insured's control and management, thus the insured's failure to perform could not be described as an undesigned or unexpected event." Assurance , 384 S.W.3d at 234 ; Hawkeye -Security , 6 S.W.3d at 426 ; Mathis , 974 S.W.2d at 650. D.R. Sherry cites Mathis as support for the notion that an accident may qualify as an occurrence, but D.R. Sherry does not mention that Mathis and Hawkeye -Security both explicitly declared that a breach of contract is not an accident or occurrence.
In fact, Assurance distinguished Hawkeye -Security and Mathis on the ground that they were breach-of-contract and breach-of-warranty cases, not tort cases. 384 S.W.3d at 234. In Assurance , a contractor and its insurer sought an equitable garnishment from a subcontractor and its insurer based upon a summary judgment in favor of the contractor against the subcontractor.[10] Id . at 226-27. The Eastern District found that "the damages were caused by an 'occurrence' " because the "summary-judgment record show[ed] that the damages sustained were the result of [subcontractor's] negligence and contain[ed] no evidence that [the subcontractor] foresaw or expected the damages[.]" Id. at 227.
Thus, the reasoning in Assurance contrasted with the reasoning in Hawkeye -Security and Mathis as the Assurance court found that "[a]llowing negligent conduct to be encompassed by a liability policy providing coverage for an 'occurrence' defined as an 'accident' comports with a reasonable person's expectation of liability coverage." 384 S.W.3d at 235 (emphasis added); see also Hawkeye -Security , 6 S.W.3d at 426 ; Mathis , 974 S.W.2d at 650.
Homeowners state in their brief that, "in the case at bar, there was no evidence that [Builder] foresaw any water issues." But the absence of such evidence at trial does not automatically establish a right by Homeowners to equitable garnishment here because their claim in the warranty trial was not based on negligence or unforeseeability; it was based instead on a breach of implied warranty of habitability. And "[i]n order to recover for breach of implied warranty of habitability in Missouri, negligence, knowledge or fault on the part of the builder-vendor need not be shown." Allison v. Home Sav. Ass'n of Kansas City , 643 S.W.2d 847, 851 (Mo. App. W.D. 1982). Accordingly, the verdict director in the warranty trial did not require the jury to determine whether Builder had negligently caused the water problem or had not foreseen the water problem. In fact, Homeowners maintained at the warranty trial that "the problem's cause remained unknown[.]" Davies , 410 S.W.3d at 304.
In regard to equitable garnishments, "[t]he underlying judgment is binding on the insurer by way of the doctrine of collateral estoppel." Kotini , 411 S.W.3d at 378. Cf. Kesler v. Curators of the Univ. of Mo. , 516 S.W.3d 884, 896 (Mo. App. W.D. 2017) ("[c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an *479 issue that was necessary and unambiguously already decided in a different cause of action"; and the first factor required in applying collateral estoppel is " 'the identity of the issues involved in the prior adjudication and the present action' ") (quoting In re Caranchini , 956 S.W.2d 910, 912 (Mo. banc 1997) ). In this case, no evidence described in the judgment supports a conclusion that Builder was negligent or did not foresee the water problem so as to support a ruling that the water problem suffered by Homeowners was an occurrence and an accident covered by the policy. See D.R. Sherry , 316 S.W.3d at 905, and Assurance , 384 S.W.3d at 235.
Because negligence and foreseeability were neither litigated in the warranty trial nor presented to the trial court in this case, collateral estoppel does not apply, and Homeowners have not established that they are covered under the policy. Cf. Assurance , 384 S.W.3d at 233 ("the issue of whether [the subcontractor's] work constituted an 'occurrence' ... [was] not at issue and not necessarily decided in the underlying action. Thus, [subcontractor's insurer] is not precluded from raising those issues in this garnishment action").
Point 1 is granted insofar as it claims the judgment's legal conclusion that "[t]he failure of [Builder] to construct the house in such a manner that it did not consistently flood when it rained constitute[d] an occurrence" is erroneous. The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.
MARY W. SHEFFIELD, P.J.-CONCURS
GARY W. LYNCH, J.-CONCURS

All statutory references are to RSMo 2016.

Mr. Broege passed away during litigation of the underlying case. Id. at 304 n.1. The parties agree in their respective petitions in the consolidated actions that Insurer defended Builder in the warranty trial and subsequent appeal under a reservation of rights.

Because Insurer is entitled to a reversal under its Point-1 claim, we do not reach its other points.

See White v. Dir. of Revenue , 321 S.W.3d 298, 308 (Mo. banc 2010). "[A] party can contest the evidence in many ways, such as by putting forth contrary evidence, cross-examining a witness, challenging the credibility of a witness, pointing out inconsistencies in evidence, or arguing the meaning of the evidence. " Pearson v. Koster , 367 S.W.3d 36, 44 (Mo. banc 2012) (emphasis added). In this case, the evidence was contested by use of the final method noted in White -the parties disputed the meaning of the evidence presented in the warranty trial.

The parties appeared through counsel, and Insurer filed a trial brief that included exhibits consisting of the following items: Homeowner's petition from the warranty trial, the policy, correspondence regarding Insurer's acceptance of defense and reservation of rights concerning the warranty trial and its appeal, the judgment from the warranty trial, the legal file from the appeal of the warranty trial, the transcript of the warranty trial, and Insurer's declaratory judgment petition. No transcript of the proceedings has been filed in this appeal, but the docket does not reflect any objection by Homeowners to Insurer's trial brief and attached exhibits. Further, in their brief, Homeowners "[agree] with the Statement of Fact[s] submitted by" Insurer in its brief.

The entry of a summary judgment in Homeowners' favor was not appropriate as Homeowners had not filed a motion seeking summary judgment on their equitable garnishment claim.

We regard the judgment as a judgment on the merits on both petitions. See Stephens v. Mikkelsen , 519 S.W.3d 437, 440 (Mo. App. W.D. 2017) (where the trial court took up a motion for judgment on the pleadings, "as well as the merits of [the plaintiff's] petition").

D.R. Sherry involved an insured contractor's suit against an insurance company for breach of contract and vexatious refusal to pay after the contractor had repurchased a house from buyers and "poor soil conditions [had] caused structural damage to the home[.]" Id. at 902. The insurance company "assert[ed] that an 'occurrence' under its policy [was] tantamount to an 'accident[,]' " id. at 905, and our high court determined "that an occurrence-type policy ... covers cases of progressive injury[.]" Id.

The stated definitions of " 'occurrence' " in the Hawkeye -Security and Mathis policies were identical: " 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.' " 6 S.W.3d at 425 and 974 S.W.2d at 648.

The definition of " 'occurrence' " in the Assurance Co. policy was identical to the definitions of the same term in the Hawkeye -Security and Mathis policies. See id. at 233-34 ; Hawkeye -Security , 6 S.W.3d at 425 ; and Mathis , 974 S.W.2d at 648.