**FOSTILL LAKE BUILDERS, LLC, Appellant,**

v.

**TUDOR INSURANCE COMPANY, Respondent,**

and

**H Design Construction, LLC, Respondent–Appellant.**

Nos. WD 72582, WD 72594.

Missouri Court of Appeals, Western District.

March 29, 2011.

Michael G. Berry and Marshall V. Wilson, Jefferson City, MO, for Appellant.

John M. Waldeck, Brian T. Goldstein and Christopher J. Zarda, Leawood, KS, for Respondent.

Andrew K. Bennett, Springfield, MO, for Respondent-Appellant.

Before Division II: KAREN KING MITCHELL, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

KAREN KING MITCHELL, Presiding Judge.

Fostill Lake[1] Builders, LLC ("Fostill") and H Design Group, LLC ("H Design") appeal the amended judgment of the Circuit Court of Cole County, Missouri ("trial court") granting summary judgment to Tudor Insurance Company ("Tudor") on Fostill's equitable garnishment action against an insurance policy issued by Tudor to H Design and dismissing H Design's action for defense costs. We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

**Factual and Procedural Background**

Fostill is the developer of a condominium project named Miramar Condominiums ("Miramar") located in Camden County, Missouri. In February of 2006, Fostill hired H Design, an architectural firm, to design Miramar. The contract between Fostill and H Design for the design of Miramar required H Design to provide "Accessibility and Building Code Review" and provided that "[a]ll documents prepared will adhere to the requirements of governing local code requirements and regulations."

After building Miramar according to H Design's plans, Fostill was sued in two different cases over whether Miramar met federal and state requirements for handicap access. The first lawsuit was filed by Metropolitan St. Louis Equal Housing Opportunity Council ("MSEHOC") in the United States District Court for the Western District of Missouri ("federal court") and alleged that Fostill and H Design failed to design Miramar in compliance with two federal laws: the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. The second suit was filed by the Missouri Attorney General in state court and alleged that Miramar's design failed to comply with the Missouri Human Rights Act ("MHRA"), § 213.126 RSMo (2000).

While both lawsuits against Fostill and H Design were pending, Fostill filed a cross-claim for professional malpractice against H Design in the federal case. Fostill alleged that H Design negligently failed to correctly identify and follow building code provisions governing access for persons with disabilities. H Design was contractually obligated to comply with these provisions in designing Miramar. Fostill's cross-claim against H Design was based exclusively on Missouri state common law. Fostill did not sue H Design under the FHA, ADA, or MHRA.

H Design tendered a request to its professional liability insurance carrier, Tudor, to defend H Design in both of the above lawsuits, and in the cross-claim by Fostill. The liability policy Tudor issued to H Design is titled "Architects and Engineers Professional Policy," and it commits Tudor to

1. The court record refers to this company both as "Fostill Lake Builders" and as "Fostill Lakeside Builders." It is unclear which form of the name is accurate. We refer to the company here as "Fostill Lake Builders," which is how it appears in the judgment below, or simply as "Fostill."

pay all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages because of claims first made against the Insured and reported to the Company during the policy period. This policy applies to actual or alleged negligent acts, errors or omissions arising out of providing professional services rendered for others as [architectural services].

Tudor denied coverage and refused to provide H Design with a defense for the suits filed by MSEHOC and the Attorney General and also for Fostill's cross-claim. Tudor's refusal to defend H Design was premised on an exclusionary clause in the policy. The clause stated, "This policy does not provide coverage and the Company will not pay claim expenses or damages for ... any claim based upon or arising out of discrimination by the Insured on the basis of race, creed, national origin, handi-

cap, age or sex." Tudor refused to defend H Design, even under a reservation of rights, stating that all claims against H Design, including Fostill's cross-claim, arose out of discrimination by H Design on the basis of handicap.

After Tudor refused to provide a defense for H Design, Fostill and three other developer defendants settled the suit with MSEHOC, which included a release of defendant H Design.[2] Fostill also entered into a section 537.065[3] settlement with H design on the cross-claim. As part of the settlement, Fostill agreed to limit recovery from H Design to the proceeds of the Tudor liability policy. On November 17, 2008, the federal court held a bench trial to determine the damages for the cross-claim that Fostill and H Design had settled. Fostill called two witnesses and offered five exhibits, evidencing damages as follows:

| | |
|---|---|
| Payment to release H Design in the MSEHOC suit: | $10,000.00 |
| Payment to settle the MSEHOC suit (25% of $90,000.00, $22,500.00): | $22,500.00 |
| Legal fees incurred in both lawsuits (25% of $88,000.00): | $22,000.00 |
| Estimated future legal fees: | $10,000.00 |
| Contingent liability for retrofitting: | $46,086.00 |
| Marketability diminution: | $125,000.00–200,000.00 |
| Price paid to H Design for plans: | $55,000.00 |
| | $365,586.00 |

After the presentation of evidence, the federal court found that "H Design was negligent and that Fostill ha[d] been damaged on account of H Design's negligence." The court entered judgment for Fostill in the amount of $365,586.00, finding that there was a factual basis for that amount and finding that the amount was fair and

reasonable. Judgment was entered on November 18, 2008.

On December 3, 2008, Tudor moved the federal court for leave to intervene on its own behalf for purposes of challenging the judgment. The court denied the motion as untimely. Nearly a year later, Tudor once again asked the federal court for leave to

---

**2.** Although the outcome of the Attorney General's case against Fostill and H Design is not addressed by the parties in their briefing, it appears by this court's review of the docket that H Design was dismissed from the suit on June 26, 2009, and that the case was dis-

missed in its entirety on November 7, 2009, following a consent judgment.

**3.** All statutory references are to RSMo 2000, as updated by the 2010 cumulative supplement, unless otherwise noted.

intervene to challenge the judgment under Rule 60(b)(4) *Fed.R.Civ.Pro.*, claiming that the Fostill judgment was void because the federal court lacked subject matter jurisdiction over Fostill's cross-claim. Tudor claimed that jurisdiction was lacking because Fostill had no allowable action for indemnity or contribution under federal law. Again, the court denied the motion as being untimely.

Fostill brought the garnishment suit in the state trial court to collect its judgment against H Design from the proceeds of the professional liability policy that Tudor had issued to H Design. H Design filed a cross-claim against Tudor to recover the costs it incurred defending the two underlying lawsuits and Fostill's cross-claim. Both Fostill and Tudor filed motions for summary judgment. Tudor's motion for summary judgment on H Design's claim was stayed. On April 27, 2010, the trial court granted Tudor's motion for summary judgment as to Fostill's claims, holding that the federal court's judgment was invalid for lack of subject matter jurisdiction, that it was not reasonable, and that the Tudor policy's discrimination exclusion made the policy inapplicable to Fostill's claim against H Design. The judgment also denied "all other claims for relief not expressly granted herein," thus apparently resolving H Design's claims in favor of Tudor. The judgment was amended on May 11, 2010, still granting summary judgment to Tudor on Fostill's claims and denying all other claims. Fostill and H Design appeal the amended judgment.

### Standard of Review

We review the trial court's grant of summary judgment *de novo. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the evidence in the light most favorable to the party against whom judgment was entered, giving the party against whom judgment was entered the benefit of all reasonable inferences from the record. *Id.* We will affirm the judgment of the trial court if there is no genuine issue of material fact and if the party for whom judgment was entered is entitled to judgment as a matter of law. *Id.* at 378.

### Fostill's Points on Appeal

### I. Federal Court's Subject Matter Jurisdiction over State–Law Claim[4]

Fostill's first point on appeal is that the trial court erred in granting Tudor's motion for summary judgment based on the finding that the federal court judgment was void for lack of subject matter jurisdiction. Specifically, the trial court found that, even though it had been styled as a claim for common law negligence, Fostill's cross-claim against H Design was essentially a claim for indemnification under the FHA and ADA and, thus, it was preempted by those laws. The trial court therefore concluded that the federal court lacked ancillary jurisdiction to decide Fostill's cross-claim against H Design and that the federal court's judgment is, consequently, unenforceable.

■ When a party secures a final judgment and attempts to satisfy the judgment with an action for equitable garnishment, the underlying judgment may not be collaterally attacked as long as the court issuing the judgment had personal and subject matter jurisdiction and the judgment is not void on its face. *Reese v. U.S. Fire Ins. Co.*, 173 S.W.3d 287, 296 (Mo.App. W.D. 2005). We, therefore, first examine Tu-

---

4. In Fostill's second amended cross-claim, its claim against H Design was reduced to a single count of professional negligence under Missouri law.

dor's claim, and the trial court's finding, that the federal court lacked subject matter jurisdiction to enter its judgment on Fostill's cross-claim against H Design.

## A. Supplemental jurisdiction over state-law claim

■ A federal district court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Moreover, the federal courts have supplemental jurisdiction over the state-law claims of any party that arise out of the same case or controversy as the underlying federal claims. 28 U.S.C. § 1367. Here, MSEHOC alleged several claims against both Fostill and H Design arising out of the ADA and FHA, so the federal court clearly had original jurisdiction over the action. When Fostill filed its state-law negligence cross-claim against H Design, it was a part of the same case or controversy as the pending federal-law claims because it shared a "common nucleus of operative fact." *See Price v. Wolford*, 608 F.3d 698, 702–03 (10th Cir.2010) (requiring a common nucleus of operative fact to satisfy section 1367's "same case or controversy" requirement). Because both MSEHOC's federal claims and Fostill's negligence claim involved H Design's failure to design Miramar in accordance with applicable building codes, including those pertaining to handicap accessibility, they involve a common nucleus of operative fact. Thus it is clear that the district court had supplemental jurisdiction over Fostill's negligence claim against H Design when the cross-claim was filed.

Furthermore, the district court had the discretion to *retain* jurisdiction over Fostill's cross-claim even after the parties settled the suit with MSEHOC. According to 28 U.S.C. § 1367(c)(3), a district court *may* decline to exercise supplemental jurisdiction over state-law claims once it has dis-

posed of all claims over which it had original jurisdiction. Federal district courts, however, *may* also retain jurisdiction and decide the state-law claims on their merits. *See Baker v. Chisom*, 501 F.3d 920, 926 (8th Cir.2007). This is exactly what the district court did in this case, so the federal court did not lose subject matter jurisdiction simply by virtue of having already dismissed the initial federal claims.

## B. Preemption

■ Regardless of whether the state-law claim was sufficiently related to the federal claims to support supplemental jurisdiction, the trial court concluded that the federal court lacked jurisdiction over the state-law negligence claim primarily because, in its view, the ADA and FHA preempted the state-law claim. "The doctrine of preemption arises from the Supremacy Clause of the Constitution, which requires that state law must give way when it conflicts with or frustrates federal law." *Chapman v. Lab One*, 390 F.3d 620, 624 (8th Cir.2004) (citing U.S. Const. art. VI, cl.2). The trial court is correct that in some cases the preemptive effect of a federal law can be so broad as to deprive a court of jurisdiction over state-law claims. We refer to this as complete preemption, and it occurs commonly in the context of the National Labor Relations Act ("NLRA") or the Employee Retirement Income Safety Act ("ERISA"); it has also been found where the Indian Gaming Regulatory Act is involved. *See id.* at 629. Where a federal law completely preempts an area of state law, it is as though the state-law cause of action had been a federal cause of action "from its inception." *Id.*

■■ Moreover, most often preemption does not affect a court's jurisdiction to hear a particular matter but is merely a defense to a party's state-law claim. *Id.* at 625. In this case, as the trial court cor-

rectly pointed out, the FHA and ADA might[5] have preempted Fostill's state-law claim against H Design under the doctrine of *conflict* or *obstacle* preemption, because neither the FHA nor the ADA provides for indemnity, and Tudor argues that Fostill's negligence claim amounts to a *de facto* claim for indemnity, which would be antithetical to the purposes of the FHA and the ADA. *See Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 600 (4th Cir. 2010). This type of preemption, as an affirmative defense, must be timely pleaded in the answer or other responsive pleading,[6] or, generally, it is waived, and the claim will be decided on the applicable state law. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir.2008).

In this case, H Design did not raise the defense of preemption in responding to the Fostill cross-claim. Therefore, the federal district court decided the claim under Missouri law on the merits, entering a default judgment as to H Design's liability and holding a trial on the issue of damages only. After judgment was entered, H Design could not have raised the defense of federal preemption, and so the federal court correctly refused as untimely Tu-dor's attempt to intervene to raise the defense.

## C. H Design could waive Tudor's affirmative defenses

An insurer who refuses to defend its insured on the basis that there is no coverage does so at its own risk, and therein loses the ability to control the defense on behalf of the insured, and the ability to assert defenses that the insured might have asserted on its own behalf. *State ex rel. Rimco, Inc. v. Dowd*, 858 S.W.2d 307, 309 (Mo.App. E.D.1993). Such an insurer is then bound by a reasonable settlement that the insured may enter into in hopes of limiting its own liability pursuant to section 537.065,[7] should the insurer's estimation of the lack of coverage turn out to be in error. *Id.*

Tudor claims that the trial court properly allowed it to argue its defense of preemption as part of the garnishment action because it was denied the opportunity to assert the defense in the federal court. Tudor cites *Cox v. Steck*, 992 S.W.2d 221 (Mo.App. E.D.1999), and *James v. Paul*, 49 S.W.3d 678 (Mo. banc 2001). Neither of these cases is helpful to Tudor, nor do they support the trial court's issuance of sum-

---

5. It is not entirely clear that Fostill's cross-claim would have been dismissed even if H Design had timely raised a preemption defense. Other federal courts have heard state-law negligence and breach of contract claims in factual situations similar to Fostill's, or have at least allowed the state courts to determine their merits. In *Sentell v. RPM Management Co.*, No. 4:08CV00629, 2009 WL 2601367, at *5 (E.D.Ark. Aug. 24, 2009), the court, although finding that the builder had no right to indemnity or contribution from the architect under the FHA, proceeded to analyze the builder's state-law claims under state law, without mentioning preemption. In *U.S. v. Murphy Development LLC*, No. 3:08–0960, 2009 WL 3614829, at *2 (M.D.Tenn. Oct.27, 2009), the court dismissed the builder's state-law claims for indemnity and contribution as being preempted by federal law, but dis-missed the builder's claims of negligence and breach of contract against the architect *without prejudice*, allowing those claims to be decided by the state court, and implying that they might not be preempted. Because Fostill's second amended cross-claim was for professional negligence and not for indemnity or contribution under the FHA or ADA, an asserted preemption defense would not necessarily be fatal.

6. Fed. R. Civ. Pro. 8(c).

7. Any settlement under section 537.065 must be reasonable. *See Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 95–96 (Mo. App. W.D.2005). The reasonableness of the settlement in this case is discussed in point II, *infra*.

mary judgment in Tudor's favor. In both *Cox* and *James,* the insurers were allowed to attack the underlying judgments collaterally even though they had refused to defend the respective insureds. However, the insurers in those cases claimed that the intentional acts of the insureds served to exclude coverage under the policies at issue, which covered only negligent acts of the insureds. In both cases, the insureds had agreed with the injured parties that they had acted negligently. The insurers in *Cox* and *James* could not have provided a defense to their respective insureds at trial because their claims that the insureds acted intentionally inherently conflicted with the insureds' positions that they acted only negligently.

Tudor faced no such inherent conflict of interest. Its claim of federal preemption by the ADA and FHA and the consequent lack of any right of indemnification or contribution as a remedy to Fostill would have favored *both* Tudor as the insurer and H Design as the insured. Accordingly, Tudor must now be bound by its decision not to defend H Design, and by the findings of negligence and damages on the part of its insured that resulted.

### D. Conclusion

Because the federal district court had subject matter jurisdiction to decide Fostill's cross-claim for negligence against H Design, the federal judgment was not void for lack of subject matter jurisdiction, and it was error for the trial court to grant summary judgment to Tudor on this basis.

## II. Reasonableness of the Judgment

■ Fostill's second point on appeal is that the trial court erred in granting sum-

mary judgment because it found that the federal court judgment in favor of Fostill was unreasonable. The trial court found that no amount of judgment, other than perhaps the $10,000 that Fostill paid to release H Design from the federal suit, would have been reasonable because the FHA and ADA preempted Fostill's state-law negligence claim, and because the FHA and ADA do not provide for indemnity or contribution. This conclusion is erroneous for several reasons. First, it is not entirely settled that a claim for contribution cannot be maintained under the FHA and ADA.[8] Second, while it is clear that no indemnity may be had under these laws, it is not entirely clear that Fostill's state-law negligence claim lacks merit. *See* footnote 4, *supra.* In any event, because preemption is an affirmative defense which H Design did not raise at trial, *see* point I.B., *supra,* it was waived, which allowed the federal court to proceed to try the negligence claim against H Design.

■ Because Tudor refused to defend H Design on Fostill's cross-claim of professional negligence against H Design, it cannot now be heard to challenge the reasonableness of the judgment. *See* point I.C., *supra.* While any settlement under section 537.065 must be reasonable, there is substantial evidence that the judgment is reasonable whenever the court accepting the settlement holds a trial and takes evidence on the issue of damages and there is no evidence of fraud or collusion. *See Truck Ins. Exch. v. Prairie Framing, LLC,* 162 S.W.3d 64, 95–96 (Mo.App. W.D. 2005).

---

8. *Compare Equal Rights Ctr. v. Niles Bolton Assocs.,* 602 F.3d 597, 604 n. 2 (4th Cir.2010) ("[W]e do not reach the question of whether a state-law claim for contribution is preempted under federal law."); *and Snyder v. Bazargani,* 329 Fed.Appx. 351, 354 (3d Cir.2009) ("We have held that there is a right to contribution from joint tort-feasors under the Fair Housing Act."); *with Sentell,* 2009 WL 2601367, at *4–8 (no indemnity or contribution under FHA, but claims still analyzed under state law).

## III. Coverage under the Tudor Policy

 Fostill's third point on appeal is that the trial court erred to the extent that it found that the Tudor policy covering H Design for professional negligence did not apply to Fostill's cross-claim because it was essentially a claim for discrimination, which was expressly excluded from coverage by the terms of the policy.

The policy provided that Tudor would pay all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages because of claims first made against the Insured and reported to the Company during the policy period. This policy applies to actual or alleged negligent acts, errors or omissions arising out of providing professional services rendered for others as [architectural services].

This part of the policy clearly indicates that it would cover H Design for claims of professional negligence in the design of a building project such as Miramar. A building project's failure to comply with any applicable building codes, whether pertaining to handicapped accessibility, fire safety, or otherwise, would put the builder at risk of liability to injured persons, or cause the builder to incur expense to retrofit the building.

Tudor points to one of the policy exclusions to support its argument that it did not cover any of the claims against H Design. The exclusion provides, "This policy does not provide coverage and the Company will not pay claim expenses or damages for ... D. any claim based upon or arising out of discrimination by the Insured on the basis of race, creed, national origin, handicap, age or sex."

First, we reject Tudor's characterization of Fostill's claim as one of discrimination. As set forth more fully below, we find that Fostill's claim against H Design was prop-erly brought as one for professional negligence. Fostill hired H Design to conduct a professional service—to design a safe and marketable condominium project that complied with all applicable building codes, including those pertaining to accessibility for physically disabled persons. Fostill's cross-claim against H Design does not allege direct discrimination, and Fostill had no standing to allege discrimination against H Design.

Even if Fostill's claim is properly characterized as "essentially a claim for discrimination," the discrimination exclusion does not unambiguously exclude coverage for Fostill's claim. Although the exclusion uses the term discrimination, that term is not defined in the Tudor policy. The American Heritage Dictionary of the English Language, Fourth Edition (2006) defines discrimination as "[t]he act of discriminating," which is then, in turn, defined as being "[m]arked by or showing bias; discriminatory." This definition indicates a *purpose* to discriminate and not a mere negligent act that has the effect of making things more difficult for a certain class of persons. The definition of discrimination urged by Tudor is akin to those found within the provisions of the ADA and FHA that refer to a building's non-compliance with accessibility requirements for physically disabled individuals. We agree with Fostill that the technical or statutory definition of the term "discrimination" should not be read into the Tudor policy unless the policy specifically references the statutory provision it intends to apply. *See Virginia Electric & Power Co. v. Northbrook Property & Cas. Ins. Co.,* 252 Va. 265, 475 S.E.2d 264, 267 (1996). Instead, we will construe the term as would an ordinary lay person purchasing such a policy. *Burns v. Smith,* 303 S.W.3d 505, 511, 512 n. 5 (Mo. banc 2010).

Tudor claims that, because H Design is an architectural firm and this is a professional liability policy, claims for discrimination in the provision of its design services could *only* be understood to be violations of accessibility requirements of laws such as the ADA, FHA, and MHRA. Tudor cites no authority for this position and we do not find it to be meritorious. If discrimination in the provision of architectural design services could only arise from the design of buildings in violation of accessibility requirements, it would presumably exclude only claims for discrimination on the basis of disability. Because building codes do not require buildings to comply with particular specifications to prevent discrimination on the basis of race, creed, national origin or sex, there would have been no reason to include these categories in the language setting forth this exclusion if Tudor's position were correct. Although Tudor halfheartedly suggested at oral argument that there could be buildings that were designed discriminatorily due to signage that limits admission to certain ethnic or racial groups, we disagree that any such exclusions of certain classes of people from buildings would likely be the responsibility of the designing architect.

Instead the policy exclusion could be interpreted to apply to situations where the architectural design firm *purposely* discriminates on one of the bases enumerated in the policy exclusion, for example, if the insured would refuse to do business with people who have a disability, or would charge women a higher rate than men when providing design services. We find that the inclusion in the discrimination exclusion of classes other than the disabled makes this exclusion ambiguous, and we construe ambiguities in insurance policies against the insurer. *Id.* at 511.

Finally, Tudor argues that it cannot be faulted for refusing to defend H Design in the underlying lawsuits because Tudor was not made aware of Fostill's second amended cross-claim, which omitted the claims for indemnification and contribution and pursued only a claim for professional negligence. Tudor concludes that the failure of Fostill and H Design to notify Tudor of the second amended cross-claim and give Tudor another chance to provide a defense prevents them from seeking to satisfy the judgment based upon that cross-claim by garnishing the Tudor policy. Tudor is mistaken.

 "An insurance company has a duty to defend an insured when the insured is exposed to *potential* liability to pay based on the facts known at the outset of the case, no matter how unlikely it is that the insured will be found liable." *Truck Ins.*, 162 S.W.3d at 79 (quoting *King v. Cont'l W. Ins. Co.*, 123 S.W.3d 259, 264 (Mo.App. W.D.2003)). This means that even if the plaintiff bringing a claim against the insured initially pleads the "wrong" cause of action, or one that is likely to be subject to a motion to dismiss, if, at the time the claim is made, facts are known to the insurer or could reasonably be ascertained by the insurer that would potentially put the claim within the scope of the policy, the insurer must defend the insured. *See id.* at 83 ("[T]hat a third party's claim against an insured would be subject to a motion to dismiss for failure to state a claim is not sufficient for an insurer to shun its duty to defend."). When Fostill brought even its initial cross-claim against H Design, the facts were essentially known to all parties, including Tudor. Thus, even if a motion to dismiss all of Fostill's initial claims against H Design on the basis that the claims were preempted by federal law would have been successful, it does not excuse Tudor from its responsibility to defend H Design.

Because Fostill's cross-claim against H Design was not clearly and unambiguously excluded from coverage under the policy, the trial court erred in granting summary judgment to Tudor on this basis, even though Tudor was not notified of Fostill's second amended cross-claim against H Design.

## H Design's Points on Appeal

### I. Duty to Defend against Cross–Claim

■ H Design also has two points on appeal. Its first point is that the trial court erred in dismissing its cross-claim in the garnishment action for the costs it incurred in defending against Fostill's cross-claim in the federal action after Tudor refused to provide a defense. The trial court's grant of summary judgment to Tudor also denied "all other claims for relief not expressly granted herein," which would have included H Design's cross-claim for costs, effectively granting judgment to Tudor on this claim.[9]

Because we have found that the Tudor policy issued to H Design did not effectively exclude Fostill's cross-claim against H Design in the federal action, Tudor had a duty to defend H Design against the cross-claim, and its refusal to do so caused H Design to incur costs defending against and ultimately settling the cross-claim. The trial court's denial of H Design's claim for costs was, therefore, in error. The trial court, on remand, should determine the amount of costs for defending the cross-claim that Tudor owes to H Design.

### II. Duty to Defend against Claims by MSEHOC and the Attorney General

■ H Design's second point on appeal is that the trial court erred in denying its claim for costs against Tudor for Tudor's failure to defend H Design against the claims made by MSEHOC against H Design in the federal action and by the Missouri Attorney General against H Design in the original state court action. Like the costs H Design sought that are the subject of its first point on appeal, the trial court's order denying "all other claims for relief not expressly granted herein" served as a judgment against H Design on its cross-claim against Tudor.

■ Although Tudor has a stronger argument that its exclusionary clause covers the direct claims asserted against H Design than it did Fostill's negligence cross-claim, we find Tudor's position that it had no duty to defend H Design, even on these direct claims, is far from iron-clad.

> An insurance company has a duty to defend an insured when the insured is exposed to *potential* liability to pay based on the facts known at the outset of the case, no matter how unlikely it is that the insured will be found liable and whether or not the insured is ultimately found liable. To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage. Coverage is principally determined by comparing the language of the insurance policy with the allegations in the pleadings. However, even though the pleadings do not show coverage, where known or reasonably ascertainable facts become available that show coverage[,] the duty to defend devolves upon the insurer.

*Truck Ins.,* 162 S.W.3d at 79 (internal citations and quotation marks omitted).

---

9. Even if the trial court had been correct in granting summary judgment to Tudor on Fostill's garnishment action, the judgment would have been erroneous in its sweeping dismissal of all of the other claims, as its finding for Tudor would not necessarily excuse its refusal to defend H Design and would not have rendered Fostill's cross-claims against H Design moot.

As stated in point III, *supra*, Tudor's duty to defend H Design was broader than its duty to indemnify. *Id.* Therefore, even if Tudor were correct that its discrimination exclusion was sufficient to prevent its having to indemnify claims against H Design for discrimination under the ADA, FHA, and MHRA, it does not necessarily follow that Tudor had no duty to defend H Design in the first instance.

The first issue is the policy exclusion's ambiguity as to whether claims that the insured's designs' failure to comply with various accessibility codes are properly excluded as claims for discrimination. Again, the inclusion of classes other than disability in the discrimination exclusion leads to the inference that *intentional* discrimination in the production of design services was contemplated by the clause, as opposed to an insured's merely *negligent* failure to comply with applicable building codes. This ambiguity must be construed in favor of coverage. *See Burns*, 303 S.W.3d at 511.

Further, even though the ADA and FHA do not provide for indemnity for violators from their *co-violators*, indemnification for violators from an *insurer* is apparently allowed. Tudor brings to this court's attention policies that expressly provide coverage for ADA, FHA, and local-law claims that arise out of the provision of professional services. Although these policies are not to be used as extrinsic evidence to show the intent of the Tudor policy at issue, they undermine any argument that Tudor might offer that an insured can never be indemnified against claims under the FHA and ADA. Therefore, Tudor has not shown that there is a public policy prohibiting its coverage of the violations alleged against H Design directly in either the federal action or the Attorney General action.

Because we find that the policy exclusion does not clearly and unambiguously exempt H Design from coverage for the allegations made against it in the underlying actions, Tudor had a duty to defend H Design in these actions, and the trial court is directed to award H Design the costs it incurred in defending those actions after Tudor refused to provide a defense.

## Conclusion

Because the federal court had subject matter jurisdiction to enter judgment on Fostill's cross-claim against H Design, and because it held a trial on the amount of damages it found to be reasonable on that claim, and because we disagree with the trial court that Tudor's policy excluded coverage for Fostill's cross-claim against H Design, we reverse the trial court's grant of summary judgment in favor of Tudor and against Fostill and remand for further proceedings consistent with this opinion. We also reverse the trial court's entry of judgment in favor of Tudor with respect to the cross-claim in the garnishment action filed by H Design and remand to the trial court for the entry of judgment in favor of H Design for the amount of costs incurred in the actions in which Tudor should have provided a defense to H Design.

JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges, concur.