**ASSURANCE COMPANY OF AMERICA and DHP Systems, Inc., Respondents,**

v.

**SECURA INSURANCE COMPANY and Missouri Valley Glass, Appellants.**

**No. ED 96627.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 10, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 21, 2012.

Application for Transfer Denied Dec. 18, 2012.

Russell F. Watters, St. Louis, MO, for respondents.

William C. Crawford, Kansas City, MO, for appellants.

LAWRENCE E. MOONEY, Judge.

This appeal arises from an equitable garnishment action. Plaintiff DHP Systems, Inc., a contractor on a construction project, and its insurer, Assurance Company of America, filed their garnishment suit

against sub-contractor Missouri Valley Glass and its insurer, Secura Insurance Company, to collect on a judgment entered in favor of DHP and against MVG in the underlying litigation. The court in that underlying judgment concluded that DHP was entitled to indemnity and contribution from MVG for monies expended by DHP in defending against, and settling, claims by the builder for damages due to MVG's work. The court in the garnishment action entered summary judgment in favor of the plaintiffs, and Secura appeals. The issues in this case are three-fold: first, whether a contract and agreement to indemnify existed between DHP and MVG; second, whether there was an "occurrence" within the terms of the policy issued to MVG by Secura; and third, whether the policy's "your work" exclusion nevertheless defeated coverage.

First, because Secura abandoned its insured, we hold it is bound by the underlying trial court's finding of liability against MVG, including the court's determination that MVG agreed to indemnify DHP. Second, because the summary-judgment record shows that the damages sustained were the result of MVG's negligence and contains no evidence that MVG foresaw or expected the damages, we hold that the damages were caused by an "occurrence." Third, because the "your work" exclusion only references damage to work performed by MVG and does not reference damage to work performed by others, we hold that the exclusionary provision does not bar coverage for damages to work or materials other than that performed or furnished by the insured, MVG. Thus, the summary-judgment court's legal conclusions were correct. However, because neither the underlying trial court nor the summary-judgment court made a finding that delineates between the amount of damages to MVG's work and the amount of damages to other parts of the property, and because the record contains insufficient evidence from which to make such a determination, we reverse the grant of summary judgment and remand the case for further proceedings.

### *Factual and Procedural Background*

The litigation in this case stems from construction of Shaw Park Plaza, a fourteen-story office building in Clayton, Missouri. Builder Clayco Construction Company contracted with DHP to furnish and install the curtain wall system on the building and to glaze the windows installed in the curtain wall.[1] DHP, in turn, subcontracted with MVG to furnish, install, and glaze the windows of the curtain wall system. Following construction and installation of the curtain wall, leaks were discovered in the curtain wall system. Those leaks caused damage to the curtain wall itself, as well as to structural components and finishes beyond the curtain wall system, including drywall, carpet, and ceiling tiles.

Clayco filed suit against DHP and MVG. The builder alleged that DHP acted negligently by improperly and defectively installing the curtain wall system; it alleged that MVG was liable for the cost of any repair of the curtain wall system. DHP, in turn, filed a cross-claim against MVG, seeking contribution and indemnification for Clayco's claims related to the damages to the Shaw Park Plaza project caused by or related to MVG's work.

At all relevant time periods, MVG maintained a commercial general liability insur-

1. A curtain wall system is a metal framing system on the face of a building containing glass panels.

ance (CGL) policy issued by Secura. That policy provides coverage for property damage caused by an "occurrence." The policy also contains two exclusions relevant here. First, the policy contains a "contractual liability" exclusion, which excludes coverage for property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply, however, to liability for damages assumed in an "insured contract." Second, the policy contains a "your work" exclusion, which excludes coverage for property damage to the insured's—MVG's—work.

Secura initially defended MVG under a reservation of rights in the underlying litigation. In its reservation-of-rights letter to MVG, Secura acknowledged the potential for coverage by stating: "[t]here is some indication that there was property damage other than that related to the curtain wall system." Secura further conceded: "to the extent that the Plaintiff proves damage to property other than 'your work', there may be coverage as long as the damage 'occurred' during the policy period, and you are liable for it." Despite these acknowledgments, Secura ultimately denied coverage and withdrew its defense a month later, in October of 2005.

Clayco and DHP settled. Specifically, DHP agreed to pay Clayco $150,000 "in settlement of Clayco's claims against DHP directly resulting from MVG's work that caused damages to the curtain wall system and other structural components and finishes in the building, including drywall, carpet, structural members and the work of other contractors." Assurance, DHP's liability insurer, paid this settlement amount to Clayco on DHP's behalf. In addition, Assurance expended $288,927.97 on DHP's behalf, in attorneys' fees and costs, in defending against Clayco's claims related to damages from MVG's work.

The trial court held a trial on DHP's contribution and indemnity cross-claim against MVG in January of 2006. DHP presented testimony regarding the contract between DHP and MVG, as well as the damages to the project, and MVG's negligence in causing those damages.

James Deschler, the president of DHP, testified to the contract between the parties. He admitted that DHP did not have a written or oral contract with MVG for the Shaw Park Plaza project. He also acknowledged that while DHP had purchase orders with MVG in the past, it did not have one with MVG for the Shaw Park Plaza project. However, Mr. Deschler explained further that DHP understood that the contract between it and MVG would include the same terms and conditions as those in the purchase orders from the parties' prior business dealings, and that those purchase orders required MVG to indemnify DHP for any and all damages, including attorneys' fees and expenses, relating to or arising from MVG's negligent work.

Steve Moeller, director of technical services for Clayco, testified regarding MVG's negligence and the damage to the Shaw Park Plaza project. He stated that MVG was negligent in failing to inspect work previously done on the window openings into which MVG installed their windows. He explained this was important because if any prior work was defective, it would go unnoticed and be incapable of being detected because MVG's work would cover it up. Mr. Moeller further stated that MVG's negligence resulted in water coming into the building. He explained that the water damaged the curtain wall, as well as other parts of the building, such as ceiling tiles, carpet, and drywall, all of which had to be replaced. He also ex-

pressly testified that the water damaged work of other contractors, both on the curtain wall and in other parts of the building. He also noted that MVG's negligence caused the owner to tear out and reinstall every piece of glass in the building.

The trial court entered judgment concluding that DHP was entitled to indemnity and contribution from MVG. The court determined that DHP and MVG had entered into a contract, and that the contract included an agreement whereby MVG would indemnify DHP for any and all damages, including attorneys' fees, relating to or arising from MVG's work on the Shaw Park Plaza project. Accordingly, the court entered judgment in favor of DHP and against MVG for the sum of $438,927.97, representing DHP's settlement payment to Clayco, plus the attorneys' fees and costs expended in defending against Clayco's claims related to damages from MVG's work. The judgment further provided that collection of the judgment could only be from the proceeds of MVG's insurance policies, and not from any of MVG's other assets.[2]

Consequently, DHP filed an equitable garnishment action against MVG and Secura, to reach and apply the insurance proceeds of the policies issued to MVG, to satisfy the judgment. Assurance filed a corresponding declaratory judgment and equitable subrogation action against the two defendants. Plaintiffs then filed a joint motion for summary judgment, seeking recovery for the complete amount of the DHP's judgment against MVG. Plaintiffs asserted that under the insuring agreement between Secura and MVG, coverage existed for the underlying judgment because of an "occurrence" that caused property damage to the Shaw Park Plaza project, for which MVG had assumed liability through an "insured contract" with DHP. Plaintiffs further asserted that the "contractual liability" and "your work" exclusions did not apply to preclude coverage because DHP and MVG had formed an "insured contract" and because the damage caused by MVG went beyond its own work. Lastly, plaintiffs asserted that in addition to agreeing to indemnify DHP for any and all damages, MVG also agreed under the insured contract to cover the attorneys' fees and costs expended by DHP. Accordingly, plaintiffs sought an order requiring Secura to indemnify Assurance for the amount of the underlying judgment.

Secura responded, contending that the liability policies issued to MVG did not afford coverage for the incident. Specifically, Secura argued that the events giving rise to the underlying lawsuit and judgment did not constitute an "occurrence," as required for coverage. Secura further maintained that even if there had been an "occurrence," several exclusions applied and effectively precluded coverage for the claim against MVG, namely those exclusions for liability assumed in a contract and for damage to the insured's work. A day prior to filing this response, but after plaintiffs had already filed their summary-judgment motion, Secura filed amended answers to plaintiffs' equitable garnishment and subrogation actions. Secura asserted a number of affirmative defenses in these answers. For one, Secura alleged that pursuant to Section 537.060, MVG was "discharged from all liability to Assurance and its insured DHP for contribution and non-contractual indemnity by virtue of its own settlement with Clayco."

2. After this judgment was entered, Secura settled Clayco's claim against MVG for $100,000.

The summary-judgment court entered judgment in favor of the plaintiffs. In sum, the court concluded that coverage existed as a matter of law for the judgment entered against MVG in favor of DHP because of an "occurrence" that caused property damage to the Shaw Park Plaza project, for which MVG assumed liability through an "insured contract" with DHP. In reaching this conclusion, the court first determined that Secura was estopped from attacking the court's finding of liability against MVG in the judgment because Secura refused to provide a defense to the claims against MVG in the underlying action. Next, the summary-judgment court found that the testimony in the underlying action clearly supported a finding that MVG was negligent in completing its work on the Shaw Park Plaza building, which in turn supported a finding of an "occurrence" for which coverage should be afforded. The court noted that under Missouri law, if the facts alleged set forth a claim of negligence, then the claim constitutes an "occurrence" within a CGL policy. Lastly, the summary-judgment court concluded that the "contractual liability" and "your work" exclusions did not apply to preclude coverage for the judgment. The court determined the "contractual liability" exclusion did not apply because MVG and DHP had entered into an "insured contract" as defined in Secura's policy. The court noted that the adduced evidence showed that DHP and MVG had established a course of dealings that included indemnification agreements. The court thus determined that the agreement whereby MVG agreed to indemnify DHP for any and all damages, including attorneys' fees and expenses, incurred by DHP that relate to or arise from MVG's negligence, constituted an "insured contract" under the terms of the policy. The court determined that the "your work" exclusion did not apply because the damage caused by MVG was beyond its own work. The court specifically noted that MVG "caused damage to components of the building beyond the curtain wall system, including drywall, carpet, structural members and the work of other contractors."

Secura appeals.

### *Standard of Review*

Our review of the circuit court's grant of summary judgment is essentially *de novo.* *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment allows the court to enter judgment, without delay, where the moving party demonstrates a right to judgment as a matter of law based on facts as to which there is no genuine dispute. *Id.*; *see also* Rule 74.04(c).

■ Summary judgment is frequently used in the context of insurance coverage questions. *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 391 (Mo.App. E.D.2007)(quotation omitted). The parties here agree on all relevant facts, thus our analysis is one of interpretation of the insurance contract. As with any other contract, the interpretation of an insurance policy, particularly in reference to the question of coverage, is a question of law that we also determine *de novo.* *D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. banc 2010); *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010).

### *Discussion*

■ Secura contends the court erred in granting summary judgment for the plaintiffs because: (1) plaintiffs failed to establish a factual basis showing that MVG had entered into an "insured contract" to indemnify DHP for damages and attorneys' fees; (2) no coverage exists for the dam-

ages allegedly caused by MVG because MVG's purported negligence was not an "accident" and thus the damages were not caused by an "occurrence" within the policy; and (3) even if there was an "occurrence," coverage is nevertheless defeated by the policy's "your work" exclusion.[3] We shall discuss each contention in turn.

### *"Insured Contract"*

Secura contends the summary-judgment court erred in finding that MVG had entered into an "insured contract" to indemnify DHP because there were no facts before either the underlying trial court or the summary-judgment court to support that conclusion. Secura notes that there is no written contract, no oral contract, no purchase order, nor any other evidence to support the existence of an insured contract between DHP and MVG for the project. We hold that Secura may not litigate this issue in the present action because it abandoned its insured and thus is bound by the underlying trial court's finding of liability against MVG.

Secura asserts that the existence of an "insured contract" is a coverage issue, and that it is entitled to present its policy defense in this garnishment action. We acknowledge that the CGL policy issued by Secura to MVG contains a "contractual liability" exclusion that excludes coverage for property damage MVG is obligated to pay damages by reason of the assumption of liability in a contract, and that the policy

3. Secura also contends the circuit court erred in granting summary judgment because plaintiffs failed to address and negate Secura's purported affirmative defense of discharge under Section 537.060 in their motion for summary judgment.

Rule 74.04, which governs summary judgment, requires a moving party to negate any properly-pleaded affirmative defenses raised by the non-moving party in order to obtain summary judgment. *ITT Commercial Fin.*, 854 S.W.2d at 381–82; Rule 74.04(c). Movants must address affirmative defenses in their summary-judgment motion; waiting to deal with the affirmative defense in reply is too late. *Taggart v. Maryland Cas. Co.*, 242 S.W.3d 755, 759 (Mo.App. W.D.2008).

Secura's contention is quite remarkable. The insurer faults the plaintiffs—and would have us fault the summary-judgment court—because plaintiffs did not address Secura's affirmative defense in their summary-judgment motion. Yet, Secura cannot demonstrate that the affirmative defense was even known to plaintiffs when they filed their motion. Secura had filed answers to plaintiffs' petitions prior to plaintiffs moving for summary judgment. Secura concedes in its brief, however, that the record is "not clear" whether its initial answer raised the now relied-upon affirmative defense. The initial answer is not part of the summary-judgment record before this Court. The parties represented at oral argument that the initial answer has been lost. The only answer contained in the record before this Court is Secura's amended answer, which does contain Secura's relied-upon defense. Based on the record before us, we can only find that Secura first raised its defense in that amended answer. However, Secura did not file that answer until after plaintiffs had already filed their summary-judgment motion. Secura's argument is fallacious because it begs the question—how were plaintiffs supposed to respond to something that was not even known to them? The insurer has assumed a proposition that requires proof. The plaintiffs cannot be faulted for their purported failure to answer an affirmative defense unless it can be shown that the defense had indeed been pleaded. If it is Secura's contention that its amended answer necessarily required modification of an already-filed motion, the insurer has provided no authority for that contention, thereby abandoning the asserted error. *Fuller v. Moore*, 356 S.W.3d 287 (Mo.App.E.D.2011).

*Taggart*, upon which Secura relies, is factually distinct and thus wholly inapposite. In that case, the defendant had raised its affirmative defense prior to the plaintiff's summary-judgment motion. Under those circumstances, the court reversed summary judgment, holding that the plaintiff was too late in addressing the affirmative defense for the first time in reply. Our circumstances, of course, are much different. We deny this point.

further provides that this exclusion does not bar coverage for liability assumed in an "insured contract." [4] At first glance, the existence of an "insured contract" may indeed appear to be a coverage issue. However, Secura is really contesting MVG's liability to DHP, not its obligation to provide coverage to its insured. Secura's entire argument is premised on its contention that plaintiffs did not establish that an insured contract existed between MVG and DHP. Yet this is a question of MVG's liability, and that question has already been conclusively determined.

It is generally well-settled that "[w]hen a party secures a final judgment and attempts to satisfy the judgment with an action for equitable garnishment, the underlying judgment may not be collaterally attacked as long as the court issuing the judgment had personal and subject[-]matter jurisdiction and the judgment is not void on its face." *Fostill Lake Builders, LLC v. Tudor Ins. Co.*, 338 S.W.3d 336, 342 (Mo.App. W.D.2011).[5] Correspondingly, Missouri law is also well-established that where an insurer is bound to protect another from liability, the insurer is bound by the result of the litigation to which the other is a party, provided the insurer had an opportunity to control and manage the litigation. *Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 709 (Mo. banc 2011)(internal quotations omitted); *Stark*, 243 S.W.3d at 399. "The standard is whether the insurer had the *opportunity* to control and manage the litigation, not whether the insurer had the *duty* to control and manage the litigation." *Schmitz*, 337 S.W.3d at 709–10 (emphases in original). As noted in a leading treatise:

> One who has undertaken to indemnify another against loss arising out of a certain claim and has notice and opportunity to defend an action brought upon such a claim is bound by the judgment entered in such action, and is not entitled, in an action against him for breach of his agreement to indemnify, to secure a retrial of the material facts which have been established by the judgment against the person indemnified.

17 Lee R. Russ, Couch on Insurance sec. 239:73 (3d ed.1995). In other words, an

4. The policy reads:

   **2. Exclusions**

   This insurance does not apply to:

   **b. Contractual liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to the liability for damages:

   (1) That the insured would have in the absence of the contract or agreement; or

   (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   "Insured Contract" means:

   f. That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement

5. Secura has not raised a question regarding either personal or subject-matter jurisdiction, nor has Secura asserted that the underlying judgment is void on its face.

insurer who had notice of the litigation and the opportunity to control and manage it is bound by the result of the litigation, and the judgment rendered therein is conclusive in a later action on the indemnity contract as to those issues and questions necessarily determined in the underlying judgment. *Whitehead v. Lakeside Hosp. Ass'n,* 844 S.W.2d 475, 482 (Mo.App. W.D. 1992). An insurer may refuse to defend its insured on the basis that there is no coverage, but the insurer does so at its own risk. *See Fostill Lake Builders,* 338 S.W.3d at 344. Where the insurer had the opportunity to defend the insured but wrongfully refused to do so, "[t]he insurer is precluded from relitigating any facts that actually were determined in the underlying case and were necessary to the judgment." John H. Mathias, et al., Insurance Coverage Disputes sec. 9.01[1] at 9–4—9–5 (1996). The facts decided in the underlying action most often will determine whether there is a duty to indemnify. *Id.* at 9–5.

As MVG's insurer, Secura was bound to protect MVG from liability. Secura's refusal to defend MVG was unjustified because the claims were arguably within coverage. *See, e.g., Stark,* 243 S.W.3d at 392 (noting insurer has duty to defend if claim is arguably within the policy's coverage); *Schmitz,* 337 S.W.3d at 710 (holding refusal to defend or to provide coverage unjustified where claim was within policy). The trial court in DHP's action against MVG determined that DHP was entitled to indemnity and contribution from MVG. In reaching that conclusion, the court determined that DHP and MVG had entered into a contract, and that the contract included an agreement whereby MVG would indemnify DHP for any and all damages, including attorneys' fees, relating to or arising from MVG's work on the Shaw Park Plaza project. Secura had the opportunity to defend MVG, and to control and manage this underlying action, but refused to do so. Consequently, Secura is bound by the issues and questions necessarily determined in the underlying judgment, including the court's determination as to MVG's agreement to indemnify DHP. *Schmitz,* 337 S.W.3d at 710; *see also Major v. Frontenac Indus., Inc.,* 968 S.W.2d 758, 763 (Mo.App. E.D.1998).

However, the issue of whether MVG's work constituted an "occurrence" or whether the "your work" exclusion applies were not at issue and not necessarily decided in the underlying action. Thus, Secura is not precluded from raising those issues in this garnishment action. We address each in turn.

***"Occurrence"***

Secura contends that no coverage exists for the damages allegedly caused by MVG because MVG's purported negligence was not an "accident," and thus the damages were not caused by an "occurrence," as required for coverage. Secura maintains that the underlying claims against MVG are nothing more than breach-of-contract and faulty workmanship claims, which, under *Mathis* and its progeny, do not fall within the definition "accident" or "occurrence." *Am. States Ins. Co. v. Mathis,* 974 S.W.2d 647 (Mo.App. E.D. 1998).

The commercial general liability policy issued to MVG by Secura provides in relevant part that Secura will pay those sums that MVG becomes legally obligated to pay as damages because of property damage caused by an "occurrence."[6] The

6. The pertinent coverage provisions read in full:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**SECTION I—COVERAGES**

policy defines "occurrence" as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define "accident." Thus, that term is defined by its common meaning, which is:

> An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by an accident.

*Columbia Mut. Ins. Co. v. Epstein,* 239 S.W.3d 667, 672 (Mo.App. E.D.2007)(quotation omitted). "An 'accident' is not necessarily a sudden event; it may be the result of a process." *Id.* "The determinative inquiry into whether there was an 'occurrence' or 'accident' is whether the insured foresaw or expected the injury or damages." *D.R. Sherry Const.,* 316 S.W.3d at 905.

The record contains no evidence that MVG foresaw or expected the damages here. *See, e.g., D.R. Sherry Const.,* 316 S.W.3d at 905 (finding sufficient evidence that cause of damage to home constituted an insurable occurrence where insured homebuilder testified that his company did not foresee that home would suffer damage from settlement of soil). We have closely reviewed the record and the briefs, and nowhere does Secura point to anything that shows MVG foresaw the damages here. Secura simply does not address this issue. Rather, the insurer contends this case should be decided in a manner consistent with *Mathis* and its progeny, *Hawkeye*—cases that involved a CGL policy containing an identical definition for "occurrence" as that contained in the policy issued by Secura. Those cases stand for the proposition that failure to perform work according to defined contractual specifications and duties—a breach of contract—does not fall within the meaning of accident or occurrence. *Mathis,* 974 S.W.2d at 650; *Hawkeye–Sec. Ins. Co. v. Davis,* 6 S.W.3d 419, 426 (Mo. App. S.D.1999). In reaching this conclusion, the courts reasoned that performance of a contract according to the terms specified therein was within the insured's control and management, thus the insured's failure to perform could not be described as an undesigned or unexpected event. *Id.*

*Mathis* and *Hawkeye* are readily distinguishable from the present case. *Mathis* was purely a breach-of-contract case. *Hawkeye* was a breach-of-contract and breach-of-warranty case. Here, in contrast, MVG is not charged with breach of its contractual obligations. Rather, it is only alleged that MVG was negligent. We note, that in lobbying for application of *Mathis* and reversal of summary judgment in this case, Secura has not pointed to any defined contractual specifications and duties that it contends MVG failed to perform.

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period.

"It is well-settled Missouri law that when a 'liability policy defines occurrence as meaning accident, Missouri courts consider this to mean injury caused by the negligence of the insured.' " *Stark,* 243 S.W.3d at 393 (quoting *Wood v. Safeco Ins. Co. of Am.,* 980 S.W.2d 43, 49 (Mo.App. E.D.1998)). As we have noted:

> In its more general sense the term ('accident') does not exclude human fault called negligence, but is recognized as an occurrence arising from the carelessness of men, ... * * * ". 1 C.J.S. Accident pp. 439, 440; 38 Am.Jur., Negligence, p. 647. When used without restriction in liability policies, "accident" has been held not to exclude injuries resulting from ordinary, or even gross, negligence. Appelman, Insurance Law and Practice, Vol. 7A, pps.4–8.

*Wood,* 980 S.W.2d at 49 (quoting *N.W. Elec. Power Coop., Inc. v. Am. Motorists Ins. Co.,* 451 S.W.2d 356, 363–64 (Mo.App.1969)(rejecting definition of accident that excluded damage resulting from negligence; holding instead that the definition of injury to or destruction of property caused by an accident means injury to or destruction of property not intentionally inflicted but caused by the negligence of the insured)); *see also White v. Smith,* 440 S.W.2d 497 (Mo.App. S.D.1969)(holding damages not intentionally inflicted but resulting from an insured's negligence (and thus constructively foreseeable to him) may be caused by accident and be within the coverage afforded by a liability policy); *see also Scottsdale Ins. Co. v. Ratliff,* 927 S.W.2d 531 (Mo.App. E.D.1996)(holding negligent termite inspection constitutes "occurrence"); *Epstein,* 239 S.W.3d at 671 (holding that if the facts alleged set forth a claim of negligence, despite being grouped with or labeled as breach of contract, the claim constitutes and "occurrence" within a CGL policy).

Allowing negligent conduct to be encompassed by a liability policy providing coverage for an "occurrence" defined as an "accident" comports with a reasonable person's expectation of liability coverage. *Wood,* 980 S.W.2d at 50. For, as we have previously noted, "[a] liability policy is designed to protect the insured from fortuitous injury caused by his actions. If the injury occurs because of carelessness of the insured, he reasonably expects the injury to be covered." *Id.* (quotation omitted)

The summary-judgment record shows that the damages sustained were the result of MVG's negligence. We hold that the damages were caused by an "occurrence."

***"Your Work" Exclusion***

Secura lastly contends that even if the damage here was caused by an "occurrence," coverage for the incident is nevertheless defeated by the policy's "your work" exclusion. That provision provides, generally, that there is no coverage for property damage to the insured's—MVG's—work.[7] Secura, as the insurer

7. The relevant part of the exclusionary provision upon which Secura relies reads in full:

> 2. **Exclusions**
> This insurance does not apply to:
> * * *
> **Damage to Your Work**
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard" ....
>
> "Your work" is defined by the policy as:
> a. Work or operations performed by you on or on your behalf; and
> b. Materials, parts or equipment furnished in connection with such work or operations.
>
> "Your work" includes:
> a. Warranties or representations made at any time with respect to the fitness, quality,

and drafter of the policy, bears the burden of demonstrating that this relied-upon exclusion applies. *Burns,* 303 S.W.3d at 510. Yet, its argument in support of its position is cursory at best. Secura simply declares that MVG's alleged negligent work is a "business risk," and as such, the claim falls squarely within the scope of the exclusion. The insurer provides no authority for its proposition. Plaintiffs call our attention to our decision in *Stark,* the often-cited and well-known apricot tree case, wherein we interpreted a similar exclusion for property damage to the insured's product.[8] *Stark,* 243 S.W.3d at 395. There we held that the provision only barred coverage for property damage to the insured's product itself; it did not bar coverage for damages to surrounding property. *Id.* In so holding, we looked to the language of the provision itself, as we must, and reasoned that the exclusion made no reference to damage to property other than the insured's goods. *Id.* (citing *Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co.,* 740 F.2d 647, 650 (8th Cir.1984)(applying Missouri law)).

The same reasoning applies here. The "your work" exclusion only references damage to (a) work performed by MVG or on MVG's behalf; and (b) materials, parts, or equipment furnished in connection with such work. The exclusion does not reference damage to work performed by others or damage to materials furnished for that work. MVG was hired to furnish, install, and glaze the windows of the curtain wall system. As a result of MVG's negligent inspection, water leaked into the building, damaging the curtain wall and windows therein, as well as other components of the building beyond the curtain wall system, including structural components, drywall, carpet, and ceiling tiles. The water damaged work of other contractors, both on the curtain wall and in other parts of the building. The damage caused by MVG went beyond its own work. The exclusion does not bar coverage for that damage.

We hold that the "your work" exclusionary provision does not bar coverage for damages to work or materials other than that performed or furnished by the insured, MVG. Secura tacitly agrees that the policy affords coverage for damage to the work of others but notes, correctly so, that the amount for which plaintiffs seek indemnification appears to be for damages to MVG's work as well as the work of others. If this is so, then the exclusion would apply to bar at least some portion of the damages described in the judgment. The underlying trial-court judgment and the summary judgment both note:

> DHP has agreed to pay $150,000 to Clayco in settlement of Clayco's claims against DHP directly resulting from MVG's work that caused damages to the curtain wall system and other structural components and finishes in the building, including drywall, carpet, structural members and the work of other contractors on the curtain wall system.

But neither the trial court nor the summary-judgment court made a finding that delineates between the amount of damages to MVG's work and the amount of damages to other parts of the property. The record contains insufficient evidence from which to make such a determination. Therefore, we reverse the grant of summary judgment and remand the case for

durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

8. The "your products" exclusion in *Stark* provided, in relevant part, that insurance did not apply "[t]o property damages to your products or your work performed arising out of such products, or any part thereof...." *Stark,* 243 S.W.3d at 395.

further proceedings to make that determination.

*Conclusion*

In conclusion, because Secura abandoned its insured, we hold it is bound by the underlying trial court's finding of liability against MVG, including the court's determination that MVG agreed to indemnify DHP. Next, because the summary-judgment record shows that the damages sustained were the result of MVG's negligence and contains no evidence that MVG foresaw or expected the damages, we hold that the damages were caused by an "occurrence." Lastly, because the "your work" exclusion only references damage to work performed by MVG and does not reference damage to work performed by others, we hold that the exclusionary provision does not bar coverage for damages to work or materials other than that performed or furnished by the insured, MVG. Thus, the summary-judgment court's legal conclusions were correct. However, because neither the underlying trial court nor the summary-judgment court made a finding that delineates between the amount of damages to MVG's work and the amount of damages to other parts of the property, and because the record contains insufficient evidence from which to make such a determination, we reverse the grant of summary judgment and remand the case for further proceedings.

KATHIANNE KNAUP CRANE, P.J., concurs.

KENNETH M. ROMINES, J., dissents in separate opinion.

KENNETH M. ROMINES, Judge.

I dissent. Negligence is a question of fact for the jury. I would reverse outright and remand for trial.

If a jury finds negligence *then* the court can address the issue of whether this is an "occurrence" under this commercial policy. It seems to me that the opinion in *Employers Mutual Casualty v. Luke Draily Construction,* No 10-00361-CV-W-DGK, 2011 WL 2582551 (W.D. Mo. June 29, 2011) is factually more appropriate for application to our case. If need be I would find no "occurrence" under the policy.